IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VALERIA TANCO and SOPHY JESTY, IJPE DeKOE and THOMAS KOSTURA, KELLIE MILLER and VANESSA DEVILLEZ, and JOHNO ESPEJO and MATTHEW MANSELL, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. _____ |
| WILLIAM EDWARD "BILL" HASLAM, as Governor of the State of Tennessee, in his official capacity; BILL GIBBONS, as Commissioner of the Department of Safety and Homeland Security, in his official capacity; and LARRY MARTIN, as Commissioner of the Department of Finance and Administration, in his official capacity, and ROBERT COOPER, as Attorney General & Reporter of the State of Tennessee, in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

## INTRODUCTION

1.    Plaintiffs bring this action to challenge the constitutionality of Article XI, section 18 of the Tennessee Constitution (hereinafter, the "DOMA Amendment") and Tennessee Code Ann. § 36-3-113 (collectively, the "Anti-Recognition Laws").  The Anti-Recognition Laws prohibit the State of Tennessee from recognizing the marriages of same-sex couples lawfully entered into in other jurisdictions.  The challenged provisions single out the marriages of same-sex couples and exempt them from Tennessee's long-standing rule that "'a marriage valid where celebrated is valid everywhere.'"  *Farnham v. Farnham*, 323 S.W.3d 129, 134 (Tenn. Ct. App.

2009) (quoting *Pennegar v. State,* 10 S.W. 305, 306 (Tenn. 1888)). Tennessee's categorical refusal to recognize the valid out-of-state marriages of same-sex couples has no reasonable or rational basis or justification and violates multiple guarantees of the Constitution of the United States. This Court should so declare and issue an injunction requiring Tennessee state officials to recognize the marriages of same-sex couples on an equal basis as the marriages of opposite-sex couples.

2. Plaintiffs are married same-sex couples who moved to Tennessee to pursue their livelihoods and make new homes for themselves and their families after they legally married in another state. If the Plaintiffs were opposite-sex couples in exactly the same situation, there would be no question that the State of Tennessee would respect their marriages and treat them as spouses for all purposes under state law—even if their marriages could not have been originally celebrated in this state for some legal reason. Solely because each Plaintiff is married to a spouse of the same sex, however, Tennessee applies a different rule and treats their marriages as a legal nullity.

3. Plaintiffs come from various walks of life and occupations and include a full-time Army reservist, a student pursuing a Master of Fine Arts degree, two professors of veterinary medicine, employees of various businesses, and parents raising minor children. They are all tax-paying citizens actively involved in their communities and have been in committed relationships with their respective spouses for many years. They now are each *married* couples, having entered into valid marriages in other states before moving to Tennessee. The familial status granted by virtue of their marriages, as authorized and recognized by their former states of residence, is of immense personal importance to them and is a status in which they have a protected liberty and property interest under the Due Process Clause of the Fourteenth Amendment to the United States. *United States v. Windsor,* 133 S. Ct. 2675, 2692 (2013).

4. The Plaintiff couples have cared for one another, devoted their lives to support each other, sacrificed for each other and their families, and made plans for the future with each other. Some of the Plaintiffs own homes in Tennessee. Some are raising or expecting children together. The situations faced by these couples are similar to those faced by other married same-sex couples in the State of Tennessee who are being denied the basic rights that are afforded by marriage – rights that were available to them in the states in which they entered into valid legal marriages, but are denied them now that they have relocated to Tennessee.

5. Tennessee's refusal to recognize same-sex couples' valid out-of-state marriages divests them of "a dignity and status of immense import" that they previously obtained by marrying. *Windsor,* 133 S. Ct. at 2692. By denying recognition to Plaintiffs' otherwise valid marriages in this manner, Tennessee "instructs all [state] officials, and indeed all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others." *Id.* at 2696. Tennessee's relegation of lawfully married same-sex couples and their children to this inferior status constitutes "a deprivation of the liberty of the person," *id.* at 2695, in violation of the Fourteenth Amendment. Because the Constitution "withdraws from Government the power to degrade or demean in the way this law does," *id.,* Tennessee's Anti-Recognition Laws are unconstitutional to the extent they deny equal legal recognition to marriages of same-sex couples validly celebrated in other jurisdictions.

6. Tennessee's refusal to respect Plaintiffs' legal marriages also undermines their financial security and deprives them of important legal rights and protections, as well as mutual responsibilities they wish to assume. Although Plaintiffs legally became family under the laws of other states, Tennessee law refuses to see them as family and instead impermissibly treats Plaintiffs and other married same-sex couples as complete "stranger[s] to [the state's] law." *Romer v. Evans*, 517 U.S. 620, 635 (1996). Plaintiffs and other married same-sex couples are denied all protections, benefits, and obligations that Tennessee law affords to all other Tennessee

residents who entered into valid marriages outside Tennessee. For example, married same-sex couples and their children are not treated equally under Tennessee's intestacy laws if one spouse dies without a valid will. Similarly, the surviving spouse may face serious economic distress because she is denied the current State inheritance tax exemption and has no right to sue if the spouse died as a result of a tragic accident, both of which are available to opposite-sex spouses. In addition, children born to same-sex married couples are denied the statutory presumption that both spouses are the legal parents of the child—something other married couples may take for granted. Married same-sex couples are thus denied critical protections that state law provides as a safety net for other married couples.

7. Tennessee's refusal to respect the valid out-of-state marriages of same-sex couples also violates the Due Process and Equal Protection Clauses because it deprives them of protected liberty and property interests in their extant marital relationships, impermissibly burdens the fundamental right to marry, discriminates based on sex and sexual orientation, and impermissibly burdens the fundamental right to travel between the states by treating same-sex spouses as though they were legal strangers. Tennessee's discriminatory marriage recognition laws, therefore, warrant application of heightened scrutiny under the Fourteenth Amendment. However, because they do not rationally advance *any* legitimate government interest, they cannot withstand any level of judicial scrutiny. *Stemler v. City of Florence*, 126 F.3d 856, 873-74 (6th Cir. 1997). Tennessee's refusal to respect the valid marriages of same-sex couples does not promote any legitmate policy objective, but serves only to demean and harm same-sex couples and their children.

8. Plaintiffs bring this action for declaratory and injunctive relief against Defendants pursuant to 42 U.S.C. § 1983, Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek (1) a declaration that Tennessee's refusal to respect the marriages of same-sex couples validly celebrated in other jurisdictions violates the Due Process,

4

Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment of the United States Constitution, and (2) an injunction requiring Defendants to fully recognize the marriages of Plaintiffs and other same-sex couples validly celebrated in other jurisdictions, and to treat those marriages the same in all respects as marriages of opposite-sex couples validly celebrated in other jurisdictions.

## THE PARTIES

9. Drs. Valeria Tanco and Sophy Jesty are Professors of Veterinary Medicine at the University of Tennessee and reside in Knoxville. While residing in the State of New York, they were legally married in that state on September 9, 2011, and subsequently moved to Tennessee to accept offers of employment. They wish to have their marriage recognized in the State of Tennessee and have been harmed by Tennessee's denial of recognition of their marriage. Drs. Tanco and Jesty are expecting their first child in Spring 2014.

10. Plaintiffs Sergeant First Class Ijpe DeKoe and Thomas Kostura are residents of Memphis, Tennessee. They were validly married in the State of New York August 4, 2011, while Mr. Kostura was a resident of that State and Sergeant DeKoe was stationed in the State of New Jersey. After Sergeant DeKoe returned from a tour of duty in Afghanistan, the couple moved to Tennessee together. They wish to have their marriage recognized in the State of Tennessee and have been harmed by Tennessee's refusal to recognize their marriage.

11. Plaintiffs Kellie Miller and Vanessa DeVillez are residents of Greenbrier, Tennessee, within this District. They were validly married in the State of New York on July 24, 2011 while residing in New Jersey. They subsequently moved back to Tennessee, where Ms. Miller had previously resided. They wish to have their marriage recognized in the State of Tennessee and have been harmed by Tennessee's refusal to recognize their marriage.

12.     Plaintiffs Johno Espejo[1] and Matthew Mansell are residents of Franklin, Tennessee, also within this District.  They were validly married in the State of California on August 5, 2008, while residing in California, and subsequently moved to Tennessee when Mr. Mansell's employer transferred his position to this state.  They wish to have their marriage recognized in the State of Tennessee and have been harmed by Tennessee's refusal to recognize their marriage.

13.     Defendant William Edwards "Bill" Haslam is Governor of the State of Tennessee. Article III, Section 10 of the Tennessee Constitution requires the governor to "take care that the laws be faithfully executed."  He is responsible for upholding and ensuring compliance with the state constitution and statutes prescribed by the legislature, including the Anti-Recognition Laws. Governor Haslam also bears the authority and responsibility for the formulation and administration of the policies of the executive branch, including administrative agency policies relating to health insurance coverage, taxation, state employee benefits, and regulation of health professions (including, for example, implementation of laws governing medical decision-making by family members), all of which involve recognizing marital status. Governor Haslam is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. Governor Haslam's official residence is in Nashville, Tennessee, within the Middle District. He is sued in his official capacity.

14.     Defendant Bill Gibbons is Commissioner of the Department of Safety and Homeland Security.  The Driver Control Division is the division of the Department of Safety and Homeland Security that operates the Driver Services Centers throughout the State of Tennessee. In his official capacity, Commissioner Gibbons is responsible for overseeing the issuance of driver's licenses in Tennessee, including the development and enforcement of policies and procedures for updating those records to reflect a Tennessee resident's marriage. Commissioner

---

[1] Johno's legal name is Joy Espejo.

Gibbons is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

15.     Defendant Larry Martin is Commissioner of the Department of Finance and Administration, which includes the Division of Benefits Administration that oversees the State of Tennessee Group Insurance Plan. In his official capacity, Commissioner Martin is the Chairman of the State Insurance Committee, which has the authority to change the benefits and eligibility requirements for the State of Tennessee Group Insurance Plan. Commissioner Martin is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times relevant to this complaint. He is sued in his official capacity.

16.     Defendant Robert Cooper is the Attorney General & Reporter of the State of Tennessee. He is sued in his official capacity because the constitutionality of the Anti-Recognition Laws is challenged in this case.

## JURISDICTION AND VENUE

17.     Plaintiffs bring this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to redress the deprivation under color of state law of rights secured by the United States Constitution.

18.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has personal jurisdiction over Plaintiffs and Defendants.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because one or more Defendants reside and/or work in this District and all Defendants reside in this State, and because a substantial part of the acts and events giving rise to this Complaint occurred in this District.

20.     This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

### Tennessee's Recognition Of Marriages Of Opposite-Sex Couples Validly Celebrated In Other Jurisdictions

21.     Tennessee law provides that a marriage validly celebrated under the laws of another jurisdiction will be recognized in Tennessee even if that marriage could not lawfully have been celebrated within this state.  Tennessee courts have long recognized and continue to recognize the rule that "'a marriage valid where celebrated is valid everywhere.'" *Farnham v. Farnham*, 323 S.W.3d 129, 134 (Tenn. Ct. App. 2009) (quoting *Pennegar v. State,* 10 S.W. 305, 306 (Tenn. 1888)).  Applying this rule, Tennessee courts have recognized as valid: (1) marriages celebrated in and valid under the law of another state, even though those marriages are bigamous and would be regarded as void and contrary to public policy if celebrated in Tennessee, *Farnham, 323 S.W.2d* at 140; (2) marriages validly contracted in another state by parties who do not satisfy the statutory minimum age qualifications to marry under Tennessee law and therefore could not have obtained a license to marry in Tennessee, *Keith v. Pack,* 187 S.W.2d 618, 619 (Tenn. 1945); and (3) common-law marriages entered into in another state and valid under the law of that state, even though Tennessee law does not provide for couples to enter into common-law marriages within the state, *Shelby County v. Williams,* 510 S.W.2d 73, 74 (Tenn. 1974); *In re Estate of Glover,* 882 S.W.2d 789, 789-90 (Tenn. Ct. App. 1994); *Lightsey v. Lightsey,* 407 S.W.2d 684, 690 (Tenn. Ct. App. 1966).

22.     With respect to marriages of opposite-sex couples, Tennessee denies recognition to out-of-state marriages only when such marriages violate principles of Tennessee public policy so strongly that the parties to the relationship would be subject to criminal prosecution in this

state. Only in such extreme circumstances have Tennessee courts concluded that marriages lawfully contracted in another state must be regarded as void. *See, e.g., Rhodes v. McAfee,* 457 S.W.2d 522, 524 (Tenn. 1970) (holding that out-of-state marriage between stepfather and stepdaughter following stepfather's divorce from mother was void where such marriage could be prosecuted as a felony in Tennessee). Tennessee law imposes no such criminal sanctions on Plaintiffs' marriages, nor could it do so without violating both the federal Constitution and the Tennessee Constitution. *See Lawrence v. Texas,* 539 U.S. 558 (2003); *Campbell v. Sundquist,* 926 S.W.2d 250 (Tenn. App. 1996).

### Tennessee's Refusal To Respect The Legal Marriages Of Same-Sex Couples Validly Celebrated In Other Jurisdictions

23. Despite Tennessee's liberal recognition of marriages celebrated under the laws of other jurisdictions, Tennessee has enacted a state constitutional amendment and statutes creating a specific exception to that rule only for legally married same-sex couples. The DOMA Amendment, codified as Article XI, section 18 of the Tennessee Constitution, provides:

> The historical institution and legal contract solemnizing the relationship of one (1) man and one (1) woman shall be the only legally recognized marital contract in this state. Any policy or law or judicial interpretation, purporting to define marriage as anything other than the historical institution and legal contract between one (1) man and one (1) woman, is contrary to the public policy of this state and shall be void and unenforceable in Tennessee. If another state or foreign jurisdiction issues a license for persons to marry and if such marriage is prohibited in this state by the provisions of this section, then the marriage shall be void and unenforceable in this state.

24. Likewise, Tennessee Code Annotated section 36-3-113 provides:

> (a) Tennessee's marriage licensing laws reinforce, carry forward, and make explicit the long-standing public policy of this state to recognize the family as essential to social and economic order and the common good and as the fundamental building block of our society. To that end, it is further the public policy of this state that the historical institution and legal contract solemnizing the relationship of one (1) man and one (1) woman shall be the only

legally recognized marital contract in this state in order to provide the unique and exclusive rights and privileges to marriage.

(b) The legal union in matrimony of only one (1) man and one (1) woman shall be the only recognized marriage in this state.

(c) Any policy, law or judicial interpretation that purports to define marriage as anything other than the historical institution and legal contract between one (1) man and one (1) woman is contrary to the public policy of Tennessee.

(d) If another state or foreign jurisdiction issues a license for persons to marry, which marriages are prohibited in this state, any such marriage shall be void and unenforceable in this state.[2]

25.    By singling out the marriages of same-sex couples, and only those marriages, for express and complete denial of recognition under Tennessee law, the Anti-Recognition Laws demonstrate that they are rooted in animus toward gay, lesbian and bisexual persons and same-sex couples. Indeed, the language of these provisions, on their face, reflects that that they were intended to subject the valid marriages of same-sex couples to different—and unequal—treatment in order to send a message that same-sex relationships are inferior, and the laws deprive married same-sex couples of the many protections and benefits available to other married couples under state law.

### Harms Caused By Tennessee's Refusal To Respect Marriages Of Same-Sex Couples Validly Celebrated In Other Jurisdictions

26.    Same-sex couples and their children, including the Plaintiffs, are harmed in numerous ways by Tennessee's refusal to respect their legal marriages celebrated in other jurisdictions.

27.    Marriage plays a unique and central personal, social, legal, and economic role in American and Tennessee society. Being married reflects the commitment that a couple makes to

---

[2] Notwithstanding the general wording of this provision, the purpose and effect of Tenn. Code Ann. 36-3-113(d) is to deny recognition *only* to the marriages of same-sex couples. Even after the enactment of this provision, Tennessee continues to recognize marriages that were legal where enacted, but that are prohibited in Tennessee, and Tennessee courts continue to apply the longstanding rule that that Tennessee generally recognizes out-of-state marriages of opposite-sex couples even when those marriages could not have been entered into in Tennessee. *See, e.g., Farnham v. Farnham*, 323 S.W.3d 129, 134 (Tenn. Ct. App. 2009).

one another, as well as representing a public acknowledgement of the depth and permanence of the married couple's private relationship. Marriage is also the sole legal institution in Tennessee through which couples can create a family unit that the state comprehensively recognizes and protects, and that third parties are required to recognize and respect. Without the protection of being recognized as legally married, the state treats even long-term committed partners as legal strangers to one another, and third parties are permitted and in some cases legally required to do so as well.

28.    Denial to same-sex couples of the status of being married in the eyes of the state despite their having previously entered into a legal marriage in another jurisdiction conveys the state's view that the couple's marriage is of lesser value and unworthy of legal recognition and support. This public rejection of married same-sex couples' familial relationship, including the legal relationships of these married Plaintiffs, damages them and their children by facilitating and encouraging both public and private discrimination, by stripping them of privacy and dignity, and by stigmatizing their relationships and families as inferior to those of opposite-sex married couples and their families.

29.    Tennessee provides a broad array of statutory protections, benefits, and mutual responsibilities for couples recognized as married under state law. The exclusion of same-sex couples like the Plaintiffs from these protections causes numerous tangible harms to married same-sex couples. Such couples are denied the public and private safety net that attaches to marriage and the ability to legally join their lives together and be treated as a family unit by the government and by other people. The harms to Plaintiffs and other same-sex couples from Tennessee's refusal to respect their marriages include the following, among others:

> a.    Tennessee imposes a duty to support one's opposite-sex spouse financially if the spouse cannot be self-supporting. Tenn. Code Ann. § 39-15-101. There is no support obligation for same-sex spouses.

b.  A married person is exempt from inheritance tax on property left to him or her by an opposite-sex spouse, including the spouse's share of the couple's home, and thus, protected against economic distress or loss of a home because of an estate tax bill. Tenn. Code Ann. § 67-8-315(a)(6). A same-sex surviving spouse or partner is denied this exemption and must pay a graduated tax of up to 9.5% for a non-exempt estate, the same rate that would apply to non-family members. Tenn. Code Ann. § 67-8-314.

c.  Communications between opposite-sex spouses enjoy evidentiary privileges in both civil and criminal proceedings, and an opposite-sex spouse may not be compelled to testify against his or her spouse over that spouses' objection except in limited circumstances. Tenn. Code Ann. § 24-1-201. Confidential communications between same-sex spouses are afforded no privilege or immunity.

d.  An opposite-sex spouse is given priority in consideration for appointment as conservator for a spouse who is in need of a conservator. Tenn. Code Ann. § 34-3-103. A same-sex spouse receives no such priority.

e.  An opposite-sex spouse or surviving spouse of a veteran receives a preference when applying for certain state jobs. A same-sex spouse or surviving spouse of a veteran receives no such preference. Tenn. Code Ann. § 8-30-307 (c).

f.  A widow or widower of an opposite-sex spouse is entitled to his or her deceased spouse's estate if the spouse died without a will. Tenn. Code Ann. § 31-2-104. A same-sex surviving spouse or partner in this situation receives nothing.

g. A child born to a married opposite-sex couple is deemed to be the child of both spouses. Tenn. Code Ann. §§ 68-3-305, -306. A child born to a same-sex couple is denied that immediate legal bond with both parents. This also deprives the child of the right of intestate succession to the estate of the parent who is not considered legally related to him or her. Tenn. Code Ann. § 31-2-104. Moreover, that parent is denied many rights commonly afforded to parents such as authority to consent to emergency medical treatment or obtain a social security card and passport for the child. The denial of these protections leaves married same-sex couples and their children highly vulnerable in the event that one parent dies or is unable to care for the child.

h. Under the Tennessee Workers Compensation Law, the opposite-sex spouse of someone who dies as a result of a work-related injury is entitled to damages and may bring suit to enforce such rights. Tenn. Code Ann. § 50-6-210. Same-sex spouses or partners have no legal standing to sue as a result of their spouse's workplace injury.

i. An opposite-sex spouse may bring a suit for the wrongful death of his or her spouse, Tenn. Code Ann. § 20-5-110, and an opposite-sex spouse's right to prosecute such action is superior to any right held by the personal representative of the deceased, Tenn. Code Ann. § 20-5-107. A same-sex spouse has no legal standing to prosecute or participate in such claims.

j. The surviving opposite-sex spouse of a member of the Tennessee Army National Guard or the Tennessee Air National Guard who has been killed in the line of duty may continue existing participation at a subsidized rate in a

group health insurance plan sponsored by a local government. Tenn. Code Ann. § 8-27-207. This benefit is not available to a same-sex surviving spouse.

k. Property tax deferral for persons over the age of 65, once granted, is extended until the death of an opposite-sex spouse. Tenn. Code Ann. § 7-64-101 *et seq*. Deferral is not available to a surviving same-sex spouse.

l. An opposite-sex spouse of a member of the armed forces who is stationed outside the State is allowed to cast an absentee ballot under the procedures and benefits outlined in Tenn. Code Ann. § 2-6-502. This right is not granted to a same-sex spouse.

m. An opposite-sex spouse who adopts a married name on their marriage license can use that document to change their surname on their Tennessee driver's license. Tenn. Comp. R. & Regs. 1340-01-13-.12. A same-sex spouse must obtain court-ordered name change, which is both costly and time consuming.

30. As a result of Defendants' actions, Plaintiffs have been denied the hundreds of tangible legal rights and benefits of having their legal out-of-state marriages recognized under Tennessee law as well as the legal status, personal security and stability, financial benefits, privacy, social recognition, and equal dignity that marriage confers on married couples and their families. Additionally, Tennessee's denial of recognition to Plaintiffs' valid out-of-state marriages has harmed them in specific ways as further described below.

**Drs. Valeria Tanco and Sophy Jesty**

31. Drs. Tanco and Jesty (hereafter, "Valeria and Sophy") first met by chance in an elevator in September 2009 while they were graduate students in the College of Veterinary Medicine at Cornell University in Ithaca, New York. They started dating in 2010, and have been in love and committed to one another ever since.

32.     Valeria and Sophy entered into a valid marriage in the State of New York on September 9, 2011.

33.     After Sophy completed her post-graduate fellowship in cardiac regenerative medicine at Cornell, they decided to look for jobs that were geographically close to one another so that they could live together, a difficult proposition for two aspiring university-level teachers. The University of Tennessee's College of Veterinary Medicine offered them that opportunity, and they accepted it readily. Sophy is an Assistant Professor in the Department of Small Animal Clinical Sciences, and Valeria is a Clinical Assistant Professor in Small Animal Reproductive Medicine.

34.     Tennessee's refusal to recognize their marriage has harmed Valeria and Sophy and will continue to do so if not remedied by this Court. In addition to the harms described above, Tennessee's denial of recognition for the valid out-of-state marriages of same-sex couples has caused Valeria and Sophy to suffer the following additional specific harms.

35.     In June 2012, Valeria and Sophy, like so many other married couples, decided to have a child together, and began trying to conceive a child through assisted reproduction. On July 10, 2013, they were thrilled to learn that Valeria is pregnant with their first child, who is due to be born in spring 2014. According to the laws of Tennessee, opposite-sex married couples who conceive a child using alternative insemination are able to take advantage of the statutory presumption that both spouses are the parents of a child born during a marriage. Tenn. Code Ann. § 68-3-306. Opposite-sex married couples therefore are not required to take any additional steps in order to obtain legal recognition for both of them as the parents of the child they decided to have together. Because the State of Tennessee does not recognize Valeria and Sophy's marriage, however, Sophy cannot benefit from that marital presumption. If they are not able to use any such steps to confirm that both are the legal parents of the child, Sophy will lack legal recognition as a parent of her own child—a status that automatically would be granted to any

opposite-sex spouse immediately upon the child's birth. The lack of automatic legal recognition that Sophy is a parent of her and Valeria's own child exposes the couple and their child to unacceptable risks and deprives them of a host of critical legal protections should any health emergencies or other problems arise during or shortly after the birth of their child.

36.     In preparation for the birth of their child, Valeria and Sophy also sought to enroll themselves in a family plan through the health insurance plans of their employer, the University of Tennessee. On September 12, 2013, Valeria and Sophy emailed Robert Chance, the Director of Payroll at the University of Tennessee, Knoxville, whose office administers the health plan for campus employees. In their email, they sought to clarify whether they were permitted to make that change during the open enrollment period because they are legally married. That same day, Mr. Chance replied that the campus participates in the State of Tennessee's Group Health Insurance plan which defines a spouse as: "Your spouse (legally married) – Article VI, section 18 of the Tennessee Constitution provides that a marriage from another state that does not constitute the marriage of one man and one woman is 'void and unenforceable in this state.'" Consequently, Mr. Chance concluded, "based on this quote from the [benefits] guide, you all will need to remain in your individual coverage"—which means paying for two separate policies.

37.     Valeria and Sophy purchased a home originally deeded in both of their names as "tenants in common for life with the remainder to the survivor in fee." Under that form of title, Tennessee law considers Valeria and Sophy to be two legal strangers who happen to own a house together. In the event that one of them dies, the other would inherit the remaining fifty percent of the house and would be taxed accordingly. In contrast, Tennessee permits opposite-sex married couples to hold title to property as tenants by the entirety, a form of ownership that allows both spouses to individually own the entire property. When one of them dies, the other automatically becomes the owner of the property and is not required to pay any taxes or fees. Seeking to obtain the significant benefits associated with tenancy by the entirety, Valeria and

Sophy attempted to record a corrected deed indicating that they hold the property as tenants by the entirety. The Knox County Register of Deeds recorded the document, but, unlike other married couples, Valeria and Sophy do not have the security of knowing that this deed will be recognized as valid should one of them die. Being unable to hold title as tenants by the entirety has significant negative tax and probate consequences that are not imposed on opposite-sex married couples. Valeria and Sophy are entitled to a declaration that the State of Tennessee may not constitutionally deny them the right to jointly own property as tenants by the entirety, just as any other married couple may do.

**Ijpe DeKoe and Thomas Kostura**

38.     Sergeant First Class DeKoe and Mr. Kostura (hereafter "Ijpe and Thom") met at camp when they were both teenagers, maintaining a close friendship for over a decade until March 2011 when they decided to start dating as adults. At the time, Ijpe was living in Memphis, Tennessee, and Thom in East Hampton, New York.

39.     In late summer 2011, Ijpe, a full-time reservist with the Army Reserves, received orders to deploy to Afghanistan. Before Ijpe's departure, Ijpe and Thom married in New York on August 4, 2011. A week later, Ijpe touched down in Afghanistan to start his nearly yearlong deployment.

40.     Ijpe returned from Afghanistan in May 2012 and moved with Thom to Memphis. From the day they arrived in Tennessee until early September 2013, their relationship enjoyed none of the benefits automatically given to married couples, despite their having been legally married in New York. According to the State of Tennessee and the federal government, their relationship did not exist. For their first year in Memphis, Ijpe continued to work for the United States Army Reserves in Memphis. During that time Thom worked while he applied to the Master of Fine Arts program at the Memphis College of Fine Arts. Thom was accepted into the program and started classes in August 2013.

41.     On September 3, 2013, the United States Department of Defense began respecting Ijpe and Thom's marriage, consistent with the Supreme Court's ruling in *Windsor v. United States*. As a result, Thom is now covered by Ijpe's health insurance, permitted to enter the base, and allowed to access the many services offered to the spouses of members of the military. Although the military now fully respects Ijpe and Thom's marriage, the State of Tennessee treats their marriage as a legal nullity the moment they step off the base.

42.     As described above, Ijpe and Thom, and their relationship, have been relegated to a second-class status. Like other legally married couples, Ijpe and Thom want the assurance of knowing that their marriage will be respected by state officials and third parties, and that they will be treated equally under the law to other married couples.   The daily injury and stigma of being treated unequally and having their legal marriage treated as a nullity in their home state are particularly painful for Ijpe, who has dedicated his life to protecting the very values of liberty and equal protection that Tennessee denies him, Thom, and their family.

43.     Tennessee's refusal to recognize Ijpe and Thom's marriage has harmed them and will continue to do so if not remedied by this Court.

**Kellie Miller and Vanessa DeVillez**

44.     Ms. Miller and Ms. DeVillez (hereafter "Kellie and Vanessa") met nearly ten years ago, like so many other modern couples, through an online dating website. After a month of communicating via email, they decided to meet in person and have been in love ever since.

45.     At the time, Kellie moved from Tennessee to live with Vanessa in New Jersey.

46.     Kellie and Vanessa married on July 24, 2011, in New York.  On their marriage certificate, they each changed their last names to a hyphenated last name, marking the beginning of their new family.

47.    In fall 2012, the couple decided to move back to Tennessee. They bought a house in Greenbrier in November, and a few months later, Kellie returned to work for her old employer, who welcomed her back.

48.    Tennessee's refusal to recognize Kellie and Vanessa's marriage has harmed them and will continue to do so if not remedied by this Court. In addition to the harms described above, Tennessee's denial of recognition to the valid out-of-state marriages of same-sex couples has caused Kellie and Vanessa to suffer the following additional specific harms.

49.    When Kellie and Vanessa first bought their home in Greenbrier, it was deeded to them as "tenants in common with the right of survivorship." The couple recorded a new quitclaim deed re-deeding the property to themselves as "tenants by the entirety" in recognition of their marriage. Robertson County Recorder Frankie Fletcher accepted the deed for recording, but its validity remains at issue. The validity of Kellie and Vanessa's deed has significant legal consequences, and unlike other married couples, Kellie and Vanessa do not have the security of knowing that this deed will be recognized as valid should one of them die. Kellie and Vanessa are entitled to a declaration that the State of Tennessee may not constitutionally deny them the right to jointly own property as tenants by the entirety, just as any opposite-sex married couple may do.

50.    In October 2013, Kellie went to the local Driver Services Center in Springfield, Tennessee. She applied to correct the last name on her driver's license to reflect the hyphenated last name she took when she and Vanessa got legally married. According to Tennessee Regulations § 1340-01-13-.12, Tennessee residents are permitted to change their name on their license using an original or certified copy of their marriage certificate upon payment of a nominal duplication fee. After providing the appropriate documentation and necessary payment, Kellie was informed by an employee of the Driver Services Center that she could not use her

marriage certificate to obtain a driver's license with her married name because the State of Tennessee does not recognize marriages of same-sex couples.

51.     In October 2013, Vanessa also went to the Drivers Services Center to obtain a Tennessee Driver's License with her married name.     She too provided the required documentation and payment, but was informed by an employee of the Driver Services Center that she could not use her marriage certificate to obtain a driver's license with her married name because the State of Tennessee does not recognize marriages of same-sex couples.

**Johno Espejo and Matthew Mansell**

52.     Mr. Espejo and Mr. Mansell (hereafter "Johno and Matt") have been in a committed relationship for more than 18 years and legally married on August 5, 2008, while they were living in California.

53.     Several years before Johno and Matt married, while still living in California, they decided to start a family together by adopting children from the foster care system in Alameda County, California. In December 2007, the county foster care agency placed their oldest child, a boy, in their home when the child was thirteen months old. About five months later, the agency placed a newborn girl in their home. The children quickly became part of the family and were adopted by Johno and Matt on September 25, 2009.  Both Johno and Matt are the legal parents of each child.  Johno quit his job as a forklift driver to take care of the children, and Matt continued to work.

54.     Approximately four years ago, Matt began working at a large international law firm in San Francisco conducting conflict-of-interest checks. Last year, the firm announced that it was planning to centralize all of its administrative services, including staff who conducted conflicts checks, in a new office located in Nashville, Tennessee. Johno and Matt decided to move their family to the Nashville area so that Matt could continue working for his current

employer. As a result, Johno and Matt now live in Nashville with their children and Matt's mother.

55. Matt's employer has instituted policies that seek to offset, to the extent possible under existing law, some of the harms caused by the State of Tennessee's refusal to recognize Johno and Matt as a married couple. But those policies are not sufficient to shield Johno and Matt from many of the harms caused by Tennessee law. Johno, Matt, and their children are denied the equal dignity and respect that comes from legal recognition of their marriage by the state. Every day Tennessee refuses to respect their marriage is a day that the family must suffer the indignity, stress, and stigma of not knowing whether or when their marriage will be recognized. Unlike opposite-sex couples who have the security of knowing that their marriage will be universally respected by the state and by private actors, Tennessee's constitutional and statutory denial of recognition to their marriage means that whatever recognition Johno and Matt's marriage may receive is only by the forbearance and good graces of Matt's employer or other private actors, and could be withdrawn at any time without recourse under state law.

56. Tennessee's refusal to recognize Johno and Matt's marriage has harmed them and will continue to do so if not remedied by this Court.

## Tennessee's Refusal To Respect Plaintiffs' Valid Out-of-State Marriages Unconstitutionally Deprives Them of Their Liberty and Property Interest In Their Existing Marriages And Denies Them Equal Protection Of The Laws

57. The United States Supreme Court has long recognized that "[t]he Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 133 S. Ct. at 2693 (quoting *Department of Agriculture v. Moreno*, 413 U.S. 528, 534–35, 93 S. Ct. 2821, 37 L.Ed.2d 782 (1973)). "The avowed purpose and practical effect" of Tennessee's refusal to recognize the marriages of same-sex couples validly celebrated in other jurisdictions "are to impose a disadvantage, a separate status, and so a stigma upon all who enter into same-

sex marriages made lawful by the unquestioned authority of the States." *Windsor*, 133 S. Ct. at 2693. For this reason, among others, Tennessee's Anti-Recognition Laws are "unconstitutional as a deprivation of the liberty of the person," *id.* at 2695, in violation of the Due Process Clause and as a deprivation of equal protection of the laws under the Fourteenth Amendment.

58.    The Anti-Recognition Laws deny recognition to the valid out-of-state marriages of Plaintiffs and other same-sex couples who validly married in their states of residence before deciding to relocate to Tennessee while leaving in place Tennessee's liberal recognition of out-of-state marriages of opposite-sex couples. These laws' "principal effect is to identify a subset of state-sanctioned marriages and make them unequal. The principal purpose is to impose inequality, not for other reasons like governmental efficiency." *Id.* at 2694. In so doing, Tennessee "undermines both the public and private significance of state-sanctioned same-sex marriages; for it tells [same-sex] couples, and all the world, that their otherwise valid marriages are unworthy of . . . recognition" in Tennessee. *Id.*

59.    Tennessee's denial of recognition to the valid marriages of same-sex couples "places same-sex couples in an unstable position of being in a second-tier marriage." *Windsor*, 133 S. Ct. at 2694. "The differentiation demeans the couple, . . . [a]nd it humiliates the . . . children now being raised by same-sex couples. The law in question makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Id.* The Anti-Recognition Laws "instruct[] all [state] officials, and indeed all persons with whom same-sex couples interact, including their own children, that their marriage is less worthy than the marriages of others." *Id.* at 2696.

60.    Tennessee's refusal to recognize the marriages of same-sex couples validly celebrated in their states of residence before moving to Tennessee also deprives these couples and their children of important protections, benefits, and responsibilities under state law. These

protections "touch[] many aspects of married and family life, from the mundane to the profound." *Id.* at 2694. Because of Tennessee's denial of recognition to their marriages, same-sex couples who relocate to this state "have their lives burdened, by reason of government decree, in visible and public ways." *Id.*

61.   In sum, "the principal purpose and the necessary effect of [the Anti-Recognition Laws] are to demean those persons who are in a lawful same-sex marriage." *Id.* at 2695. The Constitution "withdraws from Government the power to degrade or demean in the way th[ese] law[s do]." *Id.*

### None of the Actual or Possible Justifications for Tennessee's Refusal To Respect the Valid Out-of-State Marriages of Same-Sex Couples Is Sufficient To Uphold the Challenged Provisions

62.   "[N]o legitimate purpose overcomes the purpose and effect to disparage and to injure" same-sex couples who have lawfully married in other jurisdictions. *Id.* at 2696. To the contrary, each of the justifications offered in support of the Anti-Recognition Laws has been rejected by the Supreme Court of the United States as a legitimate basis for subjecting same-sex couples to unequal treatment, as these laws do.

63.   Tennessee's refusal to recognize the valid out-of-state marriages of same-sex couples cannot be constitutionally justified by appealing to the historical or traditional limitation of marriage to opposite-sex couples. In 1996, the Tennessee General Assembly passed Tennessee Code section 36-3-113 to exclude married same-sex couples from the ordinary rule that a marriage validly celebrated in another jurisdiction will be respected in the State of Tennessee. The first time the bill was discussed on the Senate floor, Senator Holcomb, who sponsored the bill, stated: "I don't know of anyone here that could possibly say that they ever thought of marriage as being other than a relationship or a union contract between a man and a woman," a theme that was repeated throughout the debates on the bill. Indeed, the language of Section 36-3-113 itself reflects this justification by referring to the limitation of marriage to

opposite-sex couples as "the historical institution and legal contract" of marriage. This language also appears in the text of the DOMA Amendment, which passed in 2004. Such appeals to history and tradition cannot provide a sufficient justification for the harms the challenged provisions inflict on Plaintiffs and other same-sex couples. The Supreme Court has recognized that tradition is not a legitimate reason to deny equal treatment to same-sex couples and relationships. *Lawrence*, 539 at 577-78 (explaining that "the fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice" and providing the example that "neither history nor tradition could save a law prohibiting miscegenation from constitutional attack") (quotation and citation omitted).

64.     Likewise, the exclusion of married same-sex couples from Tennessee's usual rule of liberally recognizing out-of-state marriages cannot be constitutionally justified by moral objections to same-sex relationships or vague appeals to "social and economic order and the common good." Tenn. Code Ann. § 36-3-113. Such views were also reflected in the floor debates on the challenged statute. Representative Peach remarked that "I think [the bill] is a strong move to support the traditional family, and support the family as intended when God created this world." During the debate, Representative Peach questioned whether there has "ever known of a case where a union of two men or two women have produced anything of importance to this society?" He further questioned whether "the union of two men or two women is against the very nature of our humanity?" Such moral condemnation of same-sex couples and relationships is never a legitimate constitutional justification for legislation, and indeed reflects an improper aim to "degrade or demean" same-sex couples and their children. *See Lawrence,* 539 U.S. at 571 (striking down laws criminalizing same-sex sexual intimacy even though "for centuries there have been powerful voices to condemn homosexual conduct as immoral"); *see also Windsor,* 133 S. Ct. at 2695; *Romer v. Evans,* 517 U.S. 620, 634-35 (1996).

65.     Nor can the challenged prohibitions be justified by arguing that the state's refusal to recognize the valid marriages of same-sex couples will promote procreation by opposite-sex couples, or that married opposite-sex couples make better parents than married same-sex couples. Both purported justifications are without merit because there is no rational connection between denying recognition to legal marriages that already exist, including those in which children are being raised, and furthering the goal of encouraging procreation or marriage by opposite-sex couples, and because there is no rational basis for presuming that same-sex couples are less capable of being good parents than opposite-sex couples and no legitimate governmental interest in penalizing children by denying them protections because of their parents' sexual orientation or sex.

66.     The legislative history of section 36-3-113 reflects that some supporters of the bill sought to rely on these purported justifications based on procreation and parenting.  Senator Fowler, a supporter of the bill, argued that "[w]hat we are simply saying is, that if you just look simply at nature then we would have to conclude that heterosexual relationships are what are intended because they are in the vast majority.  The reason that is probably the case is because without that our species does not continue.  So we are interested in making sure we continue."  Senator Fowler also claimed that "[t]raditional marriages are the best way to raise children.  It is the only way to have children; is a male female relationship and we ought to encourage that."  These same justifications were presented to the United States Supreme Court in support of the Defense of Marriage Act, and the Court found none of them sufficient to overcome the constitutional harm of denying government recognition to the otherwise valid marriages of same-sex couples who married under the laws of a state where such marriages are permitted. *See Windsor,* 133 S. Ct. at 2696.

67.     In short, in this case as in *Windsor,* "no legitimate purpose overcomes the purpose and effect to disparage and to injure those whom the State, by its marriage laws, sought to

protect in personhood and dignity. By seeking to displace this protection and treating those persons as living in marriages less respected than others," the Anti-Recognition Laws violate the Fourteenth Amendment. *Id.*

**COUNT I**
**(Denial of Due Process – Deprivation of Liberty and**
**Property Interest in Existing Valid Marriages)**

68.     Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

69.     Before relocating to Tennessee, each Plaintiff enjoyed all of the protections and responsibilities conferred by marriage under the laws of their state of residence, including the unique social recognition, stability, and privacy conferred by the status of marriage. Each of the Plaintiff couples has a reasonable expectation that they will continue to be recognized as married and to enjoy all of the protections and responsibilities conferred by marriage regardless of the fact that they, like so many other Americans, chose to move to another state after they were legally married.

70.     As the Supreme Court of the United States recognized in *Windsor*, same-sex spouses who have entered into legal marriages have a protected liberty interest in their marital status, and the government's refusal to recognize their marital status impermissibly deprives legally married same-sex spouses of that protected liberty interest. 133 S. Ct. at 2695.

71.     Same-sex spouses who have entered into legal marriages in other jurisdictions have a reasonable expectation that they will continue to be protected by the rights and protections, and by the privacy and social recognition, that are conferred by marriage when they relocate to another state, and those spouses have a protected property interest in their marital status and in the comprehensive network of legal protections that marriage provides, including the accrual of certain marital benefits over time. The government's refusal to recognize their

marital status and to provide them with the protections of marriage impermissibly deprives legally married same-sex spouses of that protected property interest.

72.     Defendants' actions infringe Plaintiffs' constitutionally protected interests in liberty and property by penalizing Plaintiffs' constitutionally protected choices in the most intimate and personal areas of their lives, and by stripping them of the ongoing protections and security of being married that they enjoyed before moving to Tennessee.

73.     Defendants' enforcement of the Anti-Recognition Laws deprive Plaintiffs of their constitutional rights under color of state law.

74.     Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

75.     Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

76.     Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT II
### (Denial of Equal Protection of the Laws -- Sexual Orientation Discrimination)

77.     Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

78.     The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

79.     Defendants' enforcement, under color of state law, of the Anti-Recognition Laws by refusing to respect Plaintiffs' valid out-of-state marriages, even though Tennessee respects the out-of-state marriages of opposite-sex couples, including opposite-sex couples who could not have legally married under Tennessee's own laws, discriminates against Plaintiffs on the basis of their sexual orientation. As a result of such discrimination, Plaintiffs are deprived of the many

benefits afforded opposite-sex couples whose out-of-state marriages are recognized in Tennessee. Tennessee's refusal to respect Plaintiffs' marriages, and Defendants' actions to enforce that refusal, denies married same-sex couples equal dignity and respect, treats same-sex couples and their children as second class citizens (and their legal marriages as second-class marriages), and invites private bias and discrimination by instructing all persons with whom same-sex couples interact, including their own children, that their marriages are less worthy than the marriages of others. Tennessee's constitutional and statutory provisions categorically withdrawing recognition from the out-of-state marriages of same-sex couples reflect disapproval and animus toward same-sex couples.

80. Married same-sex couples such as Plaintiffs are similar to married opposite-sex couples in all respects relevant to Tennessee's recognition of out-of-state marriages. Plaintiffs have made the same enduring commitment to one another as any other married couple, have promised to build their lives together as a family and to care for one another's physical health and emotional and financial well-being, and were afforded all of the rights and responsibilities of civil marriage by the states that granted them their marriages while they lived in those states.

81. Many same-sex couples, including two of the Plaintiff couples in this action, are or will be parents raising children together. Plaintiffs and their children are entitled to the privacy, respect, and equal dignity that legal recognition of their marriages provides for opposite-sex married couples and their children, as well as the tangible protections and responsibilities that state law provides to married couples and their children.

82. The Anti-Recognition Laws and any other Tennessee law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction are unconstitutional on their face and as applied to Plaintiffs because they violate the Equal Protection Clause by categorically withholding recognition of such marriages on the basis of sexual orientation.

83.     This categorical deprivation is not rationally related to the furtherance of any legitimate government interest, let alone narrowly tailored to substantially advance any compelling or important government interest.

84.     Tennessee's refusal to respect the valid out-of-state marriages of Plaintiffs based on their sexual orientation is subject to heightened scrutiny under the Equal Protection Clause.

85.     Sexual orientation bears no relation to a person's ability to perform in or contribute to society.

86.     Gay, lesbian, and bisexual people have endured a long history of discrimination both in Tennessee and nationally.

87.     Sexual orientation is a trait that is so deep-seated and fundamental to an individual's identity and sense of self that no person should be required to change it to avoid discrimination, even if such change were possible.

88.     Gay, lesbian, and bisexual people are a small and disfavored minority, and ongoing prejudice against them continues seriously to curtail the operation of those political processes that might ordinarily be relied upon to protect minorities. Gay, lesbian, and bisexual people lack express statutory protection against discrimination in employment, public accommodations, and housing at the federal level and in more than half the states, including Tennessee. They are underrepresented in federal, state, and local elected offices; indeed, there are no openly gay elected officials in any state office in Tennessee. Gay, lesbian, and bisexual people have been frequent targets of discriminatory voter initiatives, and same-sex couples have been stripped of the right to marry through 30 state constitutional amendments.

89.     Moreover, laws that discriminate based on sexual orientation are grounded in impermissible gender stereotypes and gender-based expectations, and such laws therefore warrant at least the same level of heightened scrutiny that the courts apply to laws that discriminate based on sex.

90. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

91. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

92. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

**COUNT III**
**(Denial of Equal Protection of the Laws – Sex Discrimination)**

93. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

94. Defendants' enforcement, under color of state law, of the Anti-Recognition Laws by refusing to respect Plaintiffs' valid out-of-state marriages discriminates against Plaintiffs on the basis of their sex. Because each Plaintiff is married to a person of the same sex rather than a person of the opposite sex, Plaintiffs are deprived of the many benefits afforded opposite-sex couples whose out-of-state marriages are recognized in Tennessee.

95. The sex-based classifications created by the Anti-Recognition Laws, and any other Tennessee law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, violate the Equal Protection Clause both facially and as applied to Plaintiffs. These sex-based classifications are apparent on the face of the Anti-Recognition Laws, both of which limit recognition to marriages comprised of "one (1) man and one (1) woman" and provide that marriages involving spouses of the same sex are "void and unenforceable" in Tennessee. Because of these classifications, each Plaintiff is prevented from having his or her marriage recognized solely because of the Plaintiff's sex. For example, if Sophy were a man rather than a woman married to Valeria, her marriage, validly celebrated in

New York, would be fully respected under Tennessee law. Because Sophy is a woman, however, Tennessee categorically denies recognition to her marriage.

96. Tennessee's refusal to respect the valid out-of-state marriages of same-sex couples who legally married in their states of residence before moving to Tennessee also unconstitutionally penalizes Plaintiffs for their nonconformity with sex-based stereotypes.

97. Tennessee's categorical denial of recognition to Plaintiffs' marriages based on Plaintiffs' sex and their nonconformity with sex stereotypes requires application of heightened scrutiny under the Equal Protection Clause.

98. Tennessee's refusal to respect Plaintiffs' valid out-of-state marriages does not sufficiently advance any important or compelling government interest to survive heightened scrutiny.

99. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

100. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

101. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT IV
### (Denial of Due Process – Fundamental Right to Marry)

102. Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

103. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

104. The right to marry the person of one's choice is a fundamental liberty interest protected by the Due Process Clause. Defendants' refusal, under color of state law, to respect

the valid out-of-state marriages of Plaintiffs and other same-sex couples unconstitutionally burdens this liberty interest and constitutes a "deprivation of the liberty of the person," *Windsor*, 133 S. Ct. at 2695, protected by the Fourteenth Amendment. The Anti-Recognition Laws, and any other state law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, are unconstitutional on their face and as applied to Plaintiffs.

105.    Defendants' actions infringe Plaintiffs' fundamental right to marry by penalizing Plaintiffs' constitutionally protected choice to marry the person they love. Because government interference with this fundamental right triggers strict scrutiny, Tennessee's refusal to recognize the valid out-of-state marriages of same-sex couples who legally married in their states of residence before relocating to Tennessee may be upheld only upon a showing that the restriction is narrowly tailored to advance a compelling government interest. Defendants cannot satisfy this requirement; indeed, the challenged statutes are not even rationally related to the furtherance of a legitimate government interest.

106.    Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

107.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

108.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

<u>COUNT V</u>
**(Denial of Due Process – Denial of Family Privacy, Autonomy and Association)**

109.    Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

110.    The Due Process Clause also protects fundamental liberty interests in choices that lie at the core of personal dignity, privacy, and autonomy, including each person's right to family

integrity and intimate association. Defendants' refusal, under color of state law, to respect the valid out-of-state marriages of Plaintiffs and other same-sex couples who married in their states of residence before relocating to Tennessee unconstitutionally burdens and infringes on Plaintiffs' intimate, personal, and private decisions about how and with whom they have chosen to form a family, and prevents them from enjoying their constitutionally protected interests in liberty, dignity, privacy, and security for themselves and their families. Defendants' actions therefore constitute a "deprivation of the liberty of the person," *Windsor,* 133 S. Ct. at 2695, protected by the Fourteenth Amendment. Thus, the Anti-Recognition Laws, and any other state law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, are unconstitutional on their face and as applied to Plaintiffs.

111. Defendants' actions infringe Plaintiffs' constitutionally protected interests in liberty, autonomy, family privacy, and association by penalizing Plaintiffs' constitutionally protected choices in the most intimate and personal areas of their lives. Because government interference with this fundamental liberty interest triggers strict scrutiny, Tennessee's refusal to recognize the valid out-of-state marriages of same-sex couples may be upheld only upon a showing that the restriction is narrowly tailored to advance a compelling government interest. Defendants cannot satisfy this requirement; indeed, the challenged statutes are not even rationally related to the furtherance of a legitimate government interest.

112. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

113. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

114. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## COUNT VI
### (Deprivation of Right to Travel)

115.    Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

116.    The Fourteenth Amendment protects the liberty of individuals to travel throughout the nation, uninhibited by statutes, rules, or regulations that unreasonably burden or restrict their movement. This right guards against interference with citizens' rights "to migrate, resettle, find a new job, and start a new life." *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969). The right to travel prohibits both laws that affirmatively interfere with or prevent a citizen's travel, and also laws that "penaliz[e] those who choose to" migrate to another state. *Id.* at 631. The right extends not only to temporary visits to other states, but also to becoming a permanent resident of another state. *Id.*

117.    Defendants' refusal, under color of state law, to respect the valid out-of-state marriages of Plaintiffs and other same-sex couples unconstitutionally burdens and infringes on Plaintiffs' right to travel throughout the nation and to resettle and make a new home in Tennessee. By conditioning Plaintiffs' move to Tennessee on relinquishment of all rights, benefits, and responsibilities of their marriages lawfully celebrated in other states, the state has imposed a penalty on Plaintiffs' exercise of their constitutionally protected right to travel. Defendants' actions therefore constitute a "deprivation of the liberty of the person," *Windsor*, 133 S. Ct. at 2695, protected by the Fourteenth Amendment. For this reason, the Anti-Recognition Laws, and any other state law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, are unconstitutional on their face and as applied to Plaintiffs.

118.    A law that has the effect of imposing a penalty on the exercise of the right to travel is subject to strict scrutiny and may be upheld only upon a showing that the restriction is

narrowly tailored to advance a compelling government interest. Defendants cannot satisfy this requirement; indeed, the challenged statutes are not even rationally related to the furtherance of a legitimate government interest.

119.    Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

120.    Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

121.    Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

**COUNT VII**
**(Equal Protection – Discrimination Based On**
**Exercise of Fundamental Rights and Liberties)**

122.    Plaintiffs repeat and incorporate by reference all of the above allegations of this Complaint as though fully set forth herein.

123.    The Equal Protection Clause also protects Plaintiffs against discrimination concerning their exercise of fundamental rights and constitutionally protected liberty interests protected by the Due Process Clause. Defendants' refusal, under color of state law, to respect the valid out-of-state marriages of Plaintiffs and other same-sex couples who legally married in their states of residence before choosing to relocate to Tennessee unconstitutionally discriminates against Plaintiffs with respect to their exercise of their fundamental right to marry, their liberty interests in dignity, autonomy, family privacy and association, and their right to travel. Therefore, the Anti-Recognition Law, and any other Tennessee law that purports to deny recognition to marriages of same-sex couples validly celebrated in another jurisdiction, are unconstitutional on their face and as applied to Plaintiffs.

124.    Tennessee's refusal to respect the valid out-of-state marriages of same-sex couples constitutes discrimination with respect to Plaintiffs' exercise of fundamental rights and

liberty interests based on their sexual orientation and sex, and is subject to heightened or strict scrutiny.

125. Defendants' refusal to respect Plaintiffs' marriages is not rationally related to the furtherance of any legitimate government interest, let alone narrowly tailored to substantially advance any compelling or important government interest.

126. Defendants' deprivation of Plaintiffs' constitutional rights under color of state law violates 42 U.S.C. § 1983.

127. Plaintiffs have no adequate remedy at law to redress the wrongs alleged herein, which are of a continuing nature and will cause them irreparable harm.

128. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief as requested in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

1. Declaring that article XI, section 18 of the Constitution of the State of Tennessee, Tennessee Code Annotated § 36-3-113, and any other state law that purports to deny recognition to the marriages of Plaintiffs and other same-sex couples who validly married under the law of another jurisdiction while residents of that jurisdiction, violate Plaintiffs' rights under the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment of the United States Constitution, and may not be enforced against Plaintiffs or any other same-sex couple who validly married in another jurisdiction.

2. Preliminarily and permanently enjoining enforcement by Defendants; their officers, employees, and agents; all individuals under any Defendant's supervision, direction, or control; and all persons acting in concert or participation with any Defendant, from enforcing article XI, section 18 of the Constitution of the State of Tennessee,

Tennessee Code Annotated § 36-3-113, and any other state law that purports to deny recognition to the marriages of Plaintiffs and other same-sex couples who validly married under the law of another jurisdiction while they were residents of that jurisdiction.

3. Requiring Defendants in their official capacities; their officers, employees, and agents; all individuals under any Defendant's supervision, direction, or control; and all persons acting in concert or participation with any Defendant, fully to recognize the marriages of Plaintiffs and all other same-sex couples who validly married under the law of another jurisdiction as valid and enforceable under all Tennessee state laws, regulations, and policies, including without limitation: permitting the same-sex spouses of state employees to access spousal health insurance and all other employee benefits provided to opposite-sex spouses of state employees; permitting married same-sex couples to hold real property in tenancy by the entirety; applying the statutory presumption of legal parentage to children born to married same-sex parents; and permitting same-sex spouses to change their names on driver's licenses and other state-issued identification documents in the same-manner as opposite-sex spouses.

4. Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees according to 42 U.S.C. § 1988 and any other applicable laws; and

5. Granting such other and further relief as the Court deems just and proper.

Dated this 21st day of October 2013.

Respectfully submitted,

RUBENFELD LAW OFFICE, PC

By: _Abby R. Rubenfeld_
Abby R. Rubenfeld (B.P.R. No. 6645)
2409 Hillsboro Road, Suite 200
Nashville, Tennessee 37212
Tel.: (615) 386-9077
Fax: (615) 386-3897
arubenfeld@rubenfeldlaw.com

SHERRARD & ROE, PLC

By: _William L. Harbison_
William L. Harbison (B.P.R. No. 7012)
Phillip F. Cramer (B.P.R. No. 20697)
J. Scott Hickman (B.P.R. No. 17407)
John L. Farringer IV (B.P.R. 22783)
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel.: (615) 742-4200
Fax: (615) 742-4539
bharbison@sherrardroe.com
pcramer@sherrardroe.com
shickman@sherrardroe.com
jfarringer@sherrardroe.com

HOLLAND AND ASSOCIATES, PLLC

By: _Maureen T. Holland_
Maureen T. Holland (B.P.R. No. 15202)
1429 Madison Avenue
Memphis, Tennessee 38104-6314
Tel.: (901) 278-8120
Fax: (901) 278-8125
mtholland@aol.com

*Motion for Admission Pro Hac Vice Pending*

REGINA M. LAMBERT, ESQ.

By: _Regina M. Lambert_

Regina M. Lambert (B.P.R. No. 21567)
7010 Stone Mill Drive
Knoxville, Tennessee 37919
(865) 679-3483
(865) 558-8166
lambertregina@yahoo.com


Of Counsel:

NATIONAL CENTER FOR LESBIAN RIGHTS

By: _____

Shannon P. Minter
Christopher F. Stoll
Asaf Orr
870 Market Street, Suite 370
San Francisco, California 94102
Tel.: (415) 392-6257
Fax: (415) 392-8442
sminter@nclrights.org
cstoll@nclrights.org
aorr@nclrights.org

*Motions for Admission Pro Hac Vice
Pending*

*Attorneys for Plaintiffs*