# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

| | | |
|---|---|---|
| VALERIA TANCO and SOPHY JESTY, IJPE DeKOE and THOMAS KOSTURA, DEVILLEZ, and JOHNO ESPEJO and MATTHEW MANSELL,<br><br>Plaintiffs<br><br>V.<br><br>WILLIAM EDWARD "BILL" HASLAM, as Governor of the State of Tennessee, in his official capacity; BILL GIBBONS, as Commissioner of the Department of Safety and Homeland Security, in his Official capacity; and LARRY MARTIN, as Commissioner of the Department of Finance and Administration, in his official capacity, and ROBERT COOPER, as Attorney General & Reporter of the State of Tennessee, in his official capacity,<br><br>Defendants | | 2014 JAN 29 PM 4: 38<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT OF TN<br>FILED<br><br>CASE NO:     3:13-cv-01159<br><br>Honorable Judge Aleta A. Trauger |

## MEMORANDUM IN SUPPORT OF THE MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO RULE 24 OF THE FEDERAL RULES OF CIVIL PROCEDURE

COMES NOW, I, Chris Sevier, respectfully, pursuant to rule 24 of the Federal Rules of civil procedure, moving this Court to allow me to intervene as Plaintiff in this action. A copy of the proposed Complaint in intervention is attached hereto as Exhibit A. In support of this Motion, the proposed Plaintiff would respectfully show the Court the following:

## I. **INTRODUCTION**

I, Chris Sevier, move this Court to permit intervention in the above-captioned lawsuit. I easily satisfy the Sixth Circuit's four requirements for intervention by right. More specifically, I (i) submitted a timely application to intervene; (ii) I demonstrate an interest in the impact of the Court's decision; (iii) the ability for my interest to not be protected by intervention if I am not able to intervene; and (iv) I can demonstrate that my interest will be impaired if I am not allowed to intervene; See United States of America et al vs. State of Michigan et al 424 Fd.3d. 438, 443 (6th Cir. 2005), citing Grubbs vs. Norris, 870 Fd.343,345 (6th Cir. 1989).

My motion is timely because the need and right to file did not become ripe until January 15, 2014 (or January 27, 2014 at the latest). There were two separate injuries that occurred that give me standing to intervene.

First, the Davidson County Clerk's office is a state actor, who denied my right to marry my filterless-Apple-computer-which is a highly addictive object of sex (I affectionately refer to the computer, as Scarlett Johansson, who appeared in recent movie releases "Her" and "Don Jon.") (I did not know that my reward cycle was being altered by the device to the point that it placed me in a second class sexual orientation group). On January 15, 2014, I was literally thrown out of the clerk's office into the street, along with my sexual partner in hand, for our joint

effort to submit a marriage application to the clerk. (The Application was filled out on my Apple computer and was a direct participant in satisfaction of the TCA.) Thanks to Apple's false advertising and relationship with predatory pornographers, who expose customers like myself to highly sexualized and addicting pornography through design flaws, I am as equally addicted to having sex with my computer, as the same sex proponents are addicted to having sex with a member of their own sex, who can also be classified as "sexual objects in kind." Like with illegal drugs, this is all a matter of dopamine and addiction. To suggest otherwise, is merely a game of semantics to justify a certain position in a debate that has been with us since the dawn of mankind, and has been adopted by some civilizations that are no longer in existence.

Second, on January 27, 2014, I was permitted to legally marry my Apple computer in a one of the 17 states, outside of Tennessee, within the United States that modified the definition of marriage to include a legal union between entities besides just a husband and a wife. Following this legal marriage, I, like the Plaintiffs, return to Tennessee where my marriage is not recognized. Upon doing so, I accrued the same exact injury that the Plaintiffs have, but to a greater extent.

I did not ask to be sexually bonded with my Apple computer. I was tricked into doing so by the design flaws, predatory pornographers, and the lack of responsiveness from the FCC and the DOJ to curb the distribution of highly addictive and transformative computer pornographer. Therefore, I have been as equally injured as the Plaintiffs, who were married in other states that modified the Christian/traditional legal definition of marriage to include other relationships to suit hedonistic impulses of minorities living in that state.

For the sake of equality, it is abundantly clear, that the Plaintiffs cannot object to my intervention. To do so would be to painted themselves with the same brush of bigotry as they have painted proponents of traditional families and their children, who hang in the balance. Everyone who has ever had sex of any kind can attest that whatever or whoever they had sex with a chemical bond was created. This is true whether the object of sex was a marriage partner, a person of the same sex, an animal, a blow up doll, computer porn, and so forth. The topic of sex is something that our Nation needs to have a serious debate on because it is obvious in our culture that "that which is most private is most public." There is no gene to explain gay behavior or my preference for sex with a computer. Yet, their is the simply science of dopamine to confirm why the Plaintiffs want want we are seeking collective. There is no question that all of us have issues. For someone to think that they do not have an issue - that is their issue. So, if the Plaintiffs are going to rewrite the law to get what they want to fit their particular desire. I should have the equal right to rewrite the law under the exact same principles to do the same for the sake of equality. The proponent of gay marriage want to have the right to be married to their sex partner, which must be an equally applied right to all classes of sexual orientation.

## OFFICIANT IN CALIFORNIA HAVE EXPANDED THE DEFINITION OF ALL SEXUAL ORIENTATION GROUPS CONSISTENTLY IN THE SPIRIT OF THE PRINCIPLES OF EQUALITY , LIBERTY, AND JUSTICE FOR ALL

Officiants in places like San Francisco and other parts of the country, are such champions of same sex marriage in the name of freedom, they are allowing people to marry anything they want in their efforts to champion equality amongst all groups of sexual orientation. The state of Utah was faced with a lawsuit that is almost exactly like the one filed by the original Plaintiffs. The lower court in Utah allowed the Plaintiffs to succeed, allowing gays in Utah to marry, by

finding that the Amendment that banned same-sex marriage was unconstitutional. The Judge in

Utah, with a stroke of the pen, fearlessly step forward, and took away the voice of the citizenry,

who passed the amendment, to steer the state towards "equality," not just for gays presumably,

but equality for every type of sexual class. The Utah Judge apparently knows what is best

compared to the majority of voters in that state. Accordingly, polygamist are going to be able to

marry all of their sister wives, which opens the door to all sexual orientation classes to have the

right to marry whatever object of sexual gratification they want. To allow one group of worldly

people to marry based on their form of sex addiction, but not another is hateful bigotry under the

Plaintiffs logic and the United States Supreme Court in Windsor. Self-evident common sense

would say as much given the arguments set forth in this action by both parties. The laws of the

United States were never designed to give partial relief to one group at the expense of another.

To do so, would only further cause polygamist, lovers of animals, and blow up doll proponents to

feel that they are in a second class relationship. Those of us who are in these other sexual

classifications would feel even less dignity.

On December 3, 2013, Paul Horner married his dog in San Francisco California at Chapel

of Our Lady at the Presidio. Father McHale was the officiant, who boldly stated that it was a

victory for "equality." The state of California has recognized Paul Horner's marriage under the

law. "Paul Horner explained that he was looking forward to having his honey moon in Montana,

where sex with an animal is not illegal." In the book of California's State Laws and Regulations,

there is a little known law that was passed as the state was first forming in 1850. According to

article 155, paragraph 10, it clearly states: "If a man and a man can get married and a woman and

a woman can get married, if ever comes that day, then a human and animal will have the exact

same rights to marriage in every eye of the law. God help us if this ever is to happen!" It happened, so did the marriage between a man and a dog. This is the beginning of the end result of the same-sex agenda. So, it should comes as no surprise that I was allowed to legally marry my Apple computer in one of the 17 states that allowed same sex marriage in the name of "tolerance."

## PREVENTING INTERVENTION CAUSES THOSE IN MY SEXUAL ORIENTATION CLASS TO BE LEFT BEHIND FOR

As it stands now, the proponents of same sex marriage in this action will not consider the interest of any other group that has a different sexual orientation other than their own. Those of us who have sex with a beast or inanimate object have a superior form of sex than the advocates for gay rights. It is my opinion that us guys need other men to help us become better men of virtue and character without the fear that we could be being hit on. Iron sharpens iron. Proverb 27:17. The United States is a Nation of accountability. The founding fathers recognized this when they instituted a three part system of checks and balance - executive, legislature, and judiciary (with multiple levels of appeals). If having sex out side of traditional marriage is deemed to be inferior as the product of our patriotic, legal, and emotional appeals, at least the scenario I am in does not involve two people hurting themselves through their discourageable sexual union. Same sex proponents will not consider these distinctions which will cause those of us in my sex-class to be left behind.

Nearly every argument made by the Plaintiff applies equally to my interest here. Here are some of those arguments that I join in on as applied to my class:

1. **ARGUMENT:** The Defendants contend that Tennessee's authority to regulate marriage is "absolute." The Supreme Court has expressly rejected the argument that "the regulation of marriage should be left to exclusive state control." *Loving v. Virginia*, 388 U.S. 1, 7 (1967). In the Supreme Court's most recent landmark marriage ruling, *United States v. Windsor*, the Court once again unequivocally affirmed that state laws regarding marriage are "subject to constitutional guarantees" and "must respect the constitutional rights of persons." 133 S. Ct. 2675, 2691, 2692 (2013).

**APPLICATION**: The proponents of gay behavior are saying that their marriages should be viewed as legitimate my marriage to my computer and Paul Horner's marriage to his dog max.

2. **ARGUMENT**: Federalism not only safeguards the various interests of the states and the federal government, but also "secures the freedom of the individual." *Bond v. United States*, 131 S. Ct. 2355, 2364 (2011). **APPLICATION**: So, my marriage to the Apple computer in one state cannot be barred for lack of standing to bring this matter before this Court in this state.

3. **ARGUMENT:** States respect marriages from other states except where there is a compelling reason not to because they expect that other states will respect their marriages. Interstate transportability of marriages has long been a defining feature of American law and one that is essential to stability, order, and the basic functioning of our highly mobile society. For one state to treat another state's valid marriages as null and void without adequate justification is not only an affront to the rights of individuals, it is also an affront to the equal sovereignty of other states.

**APPLICATION**: I first tried to marry my object of sexual desire in the state of Tennessee and was thrown out on the street, which the Plaintiffs have classified as an act of discrimination. I

then married my computer in another state and returned to Tennessee and faced the same

realization that the proponents of same sex marriage did - my marriage was not to be recognized

by the state of Tennessee.

4. **ARGUMENT**: *Windsor* affirmed that marriage is a status of "immense import" and held that

the government's refusal to recognize the legal marriages of same-sex couples violates their due

process rights. 133 S. Ct. at 2692. **APPLICATION:** If it violates "their" due process rights, it

violates Paul Horner's rights to marry Max, when he returns to the wedding chamber in Montana,

as it violates my due process rights, when I return to Tennessee (Let the record reflect, on a side

note, that my great, great, great Grandfather was John Sevier, the first governor of Tennessee - I

served in his unit as an Army Officer when I deployed to Operation Iraqi Freedom in furtherance

of the rule of law mission).   Nothing in *Windsor* suggests that, for constitutional purposes, the

marriages of between a person and inanimate object are somehow different from the marriages of

opposite-sex or same-sex couples.  To the contrary, the Court in Windsor seemed to emphasized

that the marriages of same-sex couples, man-beast, man-inanimate object, and opposite-sex

couples are entitled to "equal dignity." *Id*. at 2693. Such an argument is pulled directly from the

Plaintiffs. For the Court or either party to deny my intervention with offend this "equal dignity"

the Plaintiffs set forth.

5. **ARGUMENT:** A person's protected interest in maintaining parent-child bonds exists

regardless of whether that interest is threatened by the federal government or a state. *See, e.g.*,

*Troxel v. Granville*, 530 U.S. 57, 67 (2000). **APPLICATION:** I am a single father, my Apple

computer and I should have the right to adopt my child, just like the same sex couples are given

the right to adopt children, who are not biologically related. The Plaintiffs support me in this.

6. **ARGUMENT:** In striking down Section 3, the Court in *Windsor* found one of DOMA's chief defects to be its deviation from "the long-established precept that the incidents, benefits, and obligations of marriage *are uniform for all married couples within each State*." *Windsor,* 133 S. Ct. at 2692 (emphasis added). Tennessee's Anti-Recognition Laws share such a defect. The federal government recognizes the marriages of the Plaintiff couples for almost all federal "incidents, benefits, and obligations of marriage." But Tennessee denies the Plaintiff couples access to "incidents, benefits, and obligations of marriage" under Tennessee law. Thus, the Anti-Recognition Laws create a situation in which "the incidents, benefits, and obligations of marriage" are not "uniform for all married couples within [the] State" of Tennessee.

All opposite- sex married couples enjoy the protections that both Tennessee and the federal government guarantee for married couples. Same-sex couples, however, have access to federal spousal protections, but are denied access to state law spousal protections. As in Windsor, this unequal treatment "places same-sex couples in an unstable position of being in a second-tier marriage." 133 S. Ct. at 2694. **APPLICATION:** All of these things are equally true to those of us who are already legally married to pets and inanimate objects (to include those who want to be). My sex class are subjected to being in a second-tier marriage if we are not allowed to intervene. Tennessee could not strip me of parental rights simply for being bonded sexually to my filterless Apple computer. It is equally impermissible for the state to strip me of marital status simply because I have a sexual relationship with my computer that is rife with highly addicting pornography purposed to provoke sexual response. The government and Apple failed to enforce

obscenity laws, now I have developed an addiction that I am being punished for. The right at issue here is no more a new "right to marry a sexual object" than the right in Loving was a "right to interracial marriage," the right in Turner was a "right to prisoner marriage," or the right of the Plaintiffs to marry a member of the opposite sex. The scope of a fundamental right does not depend on who is exercising it.

7. If the Plaintiffs assertion are taken as true, the Anti-Recognition Laws impermissibly burden my constitutionally protected right to travel in the same way it does the Plaintiffs. *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969) in one of the most severe ways possible—by essentially nullifying for state-law purposes the couples' marriages and by treating them as legal strangers to each other. Its as if I am supposed to consider myself a freak of nature when I am having sex with a computer, when the porn industry is more profitable than major-league baseball, the NFL, and the NBA combined. The Porn industry generated 97 billion annually, 11 billion of that is generated from the United States alone. I am not the only one in a committed sexual relationship with my computer - albeit it is not something I would have chosen. Like the gay proponents, I cannot help my sexual preference at this point. The resulting burden on Plaintiffs' exercise of the right to travel is profound, as it is on my right to travel.

The Executive branch has not just maneuvered to recognized same-sex marriage by refusing to defend DOMA. The executive branch and Congress have done drastically more to have sexual relations with a computer normalized. Despite the relentless efforts of men of Honor, like form DOJ prosecutor, Pat Truman, who has done everything within his power shy of suing Eric Holder, the FCC, and the FTC to do something about the distribution of computer

pornography, nothing has been done because addiction is good for the economy in the short run. Eric Holder has not prosecuted a single solitary child obscenity case, since Obama was elected to office because Congress and the Executive branch want America to consists of a Nation of sex addicts in the same way the Hollywood does because addiction stimulates spending (although rampant addiction weakens a nation and sets the stage for totalitarianism).

8. Given the totality of the Plaintiffs arguments in light of the facts in my case, for the Court to deny my intervention would be an indication to all sexually oriented classes, to include those who prefer sex with the same sex, sex with an animal, and sex with an object, that the United States finds that the Plaintiff's and I are lying to ourselves - that our relationships with our object of affection and sexual desire do not rise to the level of marriage but is a lesser form of sex. Yet, if same sex proponents are allowed to "cash in" on the benefits that are afforded only to traditionally marriages couples, then so should those of us who are in the other sex categories equally have the right to "cash in" as well. "All hail equality for all" is the rally cry in the same way that "Obama for change" was. Because I have step forth from the shadows to assert this cause of action as the voice of a disfavored minority, the President and the Plaintiffs cannot turn around and say that they really didn't mean it. If change is what Obama and the Supreme Court wants, change is what they should have, but not just partial change, equal change for all sexual oriented classes in this allegedly enlightened day and age that has imposed social rules that are so restrictive that have constituted a constructive burning of our history books to include the Bible.

9. Perhaps what has happened is that humans are have the capacity to be spiritual or hedonistic. Hedonist want to shape the law to suit their personal human desires through any means necessary

because their is no morality or Godly accountability of the promise of the afterlife. The

Defendants suggest that they will even attempt to do this by trick. (See the 2014 same sex

marriages that took place at the Grammys during Madonna's performance). Somewhere along

the way, some states comprised of more people who were hedonistic than there were moral. The

majority of hedonist elected officials who did their bidding. (President Obama was arguably

elected by the hedonistic majority who he gave them what they wanted and now our Nation is

merely in the state that it is in).

    To prevent my intervention would show that there were cracks that were formed in our

system of justice, when a few other states constructively succeed from our Union and authorized

same sex marriage in the name of "freedom and equality." The Plaintiffs are exploiting these

cracks to impose their belief system on the sovereign state of Tennessee so that they will not feel

so ashamed about their particular non-traditional brand of sex addiction. Why should I not be

allow to do the same thing? The Plaintiffs have laid out a compelling case that morality has no

bearing on the law. So to bar me from intervention on a moral basis is invalid.

10. **ARGUMENT**: The resulting burden on Plaintiffs' exercise of the right to travel is

profound." *Johnson,* 310 F.3d at 498. For opposite-sex married couples, it would be

inconceivable that the price of relocating to another state would be the relinquishment of their

marital status. Yet, that is exactly the penalty the Anti-Recognition Laws seek to impose on

same-sex couples. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 535 (6th

Cir. 2007) **APPLICATION:** The argument fits squarely to the facts in my case. Like the

original Plaintiffs I should not be required sacrifice of marital status as the price of migration.

The evidentiary record demonstrates that I travel around the Nation and world regularly to volunteer my time to help those who are suffering, feeling oppressed, and are discarded by society - the Plaintiffs and I feel that we are being oppressed for different reasons - the law will not give us the dignity that it gives traditional married couples.

11. **ARGUMENT:** The Plaintiffs have attacked the Defendants for arguing that the Anti-Recognition Laws do not discriminate against Plaintiffs because, Tenn. Code Ann. § 36-3-113(d) and Article XI, section 18 of the Tennessee Constitution bar recognition by Tennessee of any marriage that could not be entered into in Tennessee. Opp. at 8 (asserting that Plaintiffs' marriages are "but one of many types of marriages not recognized by the State").

**APPLICATION:** Likewise, my marriage to the inanimate object is but one of many marriages that are barred by the state of Tennessee so intervention should be allowed, since the Plaintiffs and I are similarly situated. If Paul Horner wants to intervene in this action. I will not object to that request because Mr. Horner would merely be a representative of another minority sexually oriented class. The Plaintiffs should not be allowed to object either.

12. **ARGUMENT**: No one can suggest with a straight face that the Plaintiffs attacking this: *"The . . . relationship of one (1) man and one (1) woman shall be the only legally recognized marital contract in this state"; and "[i]f another state or foreign jurisdiction issues a license for persons to marry and if such marriage is prohibited in this state by the provisions of this section, then the marriage shall be void and unenforceable in this state."* **APPLICATION:** I too can call this into question because of an addiction that was imposed on me by defective device. I did not ask for that addiction. I had no choice in the matter. Its wasn't like a gay person, who downloaded Lady Gaga's "Born This Way" track and decided to go through the rigorous

complicated steps of having consensual sexual relations with a person of the same sex. My particular brand of sex addiction was forced upon me due to the non-responsiveness of the United States' executive branch, FCC, FTC, and through planned out false advertising campaigns. My sexual bonding to my Apple computer was the result of highly pornographic content that was always one click away. I had no idea that I would need to proactively take steps to avoid looking at this mind altering pornography, when I was convinced by fraudulent marketing scams that I was subjecting myself to having my reward cycle infringed upon.

13.  To not allow me to intervene would do more than just show unjustifiable preferential treatment to one sex class (which is of course the basis for the Plaintiffs entire argument). If the Court does not allow me to intervene, it could be legitimately asserted that same sex behavior proponents are trying to back door the state of Tennessee, in the same way that they "back door each other." The formula is simple. If you are gay and live in Tennessee, go to New York, get married, return to living in Tennessee, then sue the state, and twist the arm of Tennesseans into considering your relationship to have the same social and legal standing as traditional married people. However, if the Court allows other sexual orientation classes to intervene, then it will better reframe the matter as one of "tolerance and equality," since that is the way the Windsor Court wants it. The evidence suggests that if the Defendants are blessed with intuition, they would have to concede on that straight forward point as well.

14.  **EXPANDING EQUAL PROTECTION AND JUSTICE GINSBERG'S PUBLIC SPEECH ABOUT FORMING A MORE PERFECT UNION BY CHANGING THE DEFINITION OF MARRIAGE TO FIT PERSONAL DESIRES OF MINORITY GROUPS**: (On an aside note, I recently saw Justice Ginsberg speak at a public seminar; she

stated in a very pleasant way that the equal protection clause was her favorite part of the

Constitution. In reference to same sex marriage question, she stated that the equal protection

clause was designed to help the United States "form a more perfect union." Enabling my

intervention enables the United States really puts the equal protection clause to the test instead of

merely playing "footsie" with it. Allowing me to intervene destroys the perception that one group

of self-interested people are trying to twist the laws to fit their peculiar sexual behavior at the

exclusion of other groups, who engage in a different sort of sexual behavior that is not lesser than

their own. Allowing me to intervene, helps the Court decide if redefining marriage helps our

Nation to form a more "perfect union" as Justice Ginsberg proffered at public speaking

engagement.

15. **ARGUMENT**: The Plaintiff's have argued:

Tennessee courts have continued to recognize and apply the longstanding rule that a marriage

validly entered into in another state will be treated as valid in Tennessee as well, even if the

marriage would not be permitted under Tennessee law. *See, e.g., Farnham v. Farnham*, 323 S.W.

3d 129, 140 (Tenn. Ct. App. 2009); *Lindsley v. Lindsley*, 2012 WL 605548, *1 (Tenn. Ct. App.

Feb. 27, 2012); *Bowser v. Bowser*, 2003 WL 1542148, *1 (Tenn. Ct. App. March 26, 2003);

*Stoner v. Stoner*, 2001 WL 43211, *3 (Tenn. Ct. App. Jan. 18, 2001); *Payne v. Payne*, 1999 WL

1212435, *4 (Tenn. Ct. App. Dec. 17, 1999); *Ochalek v. Richmond*, 2008 WL 2600692, *6 n.9

(Tenn. Ct. App. Jan. 30, 2008). **APPLICATION:** Just as the Plaintiffs apply this to their

argument. I can equally apply the same argument to my set of facts.

16. The Plaintiffs argue that even if their marriages were not seen as valid, they should have the

right to enter into a new marriage contract in Tennessee that the state must recognize. The

Plaintiffs have effectively been injured by the clerk's office, like I was, when the clerk's office

threw me out on the street and threatened me for seeking marry my Apple computer. To support

there arguments in this regard, the Plaintiffs have asserted that "even if Defendants were correct,

however, that section 36-3-113(d) changed over a century of case law and created a broad new

rule barring recognition of *all* out-of-state marriages that do not comply with Tennessee's own

marriage laws, the Anti-Recognition Laws would still violate equal protection."  When the clerk,

had a conniption at my peaceful request to allow me to marry my computer, she was acting as a

state actor who took away my liberty by merely enforcing the state laws that were written. The

Plaintiffs have asserted, on our collective behalf, this denial violated the equal protection clause

giving rise to a cause of action under 42 USC 1983 pursuant to the 14th Amendment. Therefore,

even if the Defendants were to allege people in other sexual oriented class, like myself and Paul

Horner's, marriages were not valid, they can still not bar my intervention because my argument

parallels the Plaintiffs', regarding the legitimacy of the Tennessee laws under the equal protection

clause. In short, I should be allowed to intervene for more than one reason.

　　　　Lets be honest, the Plaintiffs are acting as heroes for "equality and freedom." What they

really want to do is have the laws of Tennessee changed so that all gay people in Tennessee can

be married like they are in the 17 states that have legalized same sex marriage.

This is what is really at play, like it was in Windsor (which was framed as a tax case for ulterior

purposes). The 2014 Grammy award show was primarily a stunt to push same sex marriage in

the name of equality and freedom on the backs of "cool musicians." The Plaintiffs, who have

admitted repeatedly that morality does not matter, are championing the rights of "equality" but only for their particular class of sexual orientation. Allowing me to intervene will allow me to do the same thing for my particular class of sexual orientation, even though I entirely deny that this is the motivation of the lawsuit in conjunction with the Plaintiffs.

17. The expansion of the equal protection clause would cover those of us in the unique sexual oriented class that prefer sex with an inanimate object. I can join the Plaintiffs, who asserted "a law that facially discriminates against a particular group is not insulated from challenge under the Equal Protection Clause merely because other laws may *also* subject other classes of persons to adverse treatment."

18. It was the Plaintiffs who are argued: If the legitimacy of same sex marriage warrants "careful consideration" by Tennessee. If this is true, then Mark Horner's marriage to his dog max and my marriage to my filterless Apple computer warrant "careful consideration" under *Windsor*, 133 S. Ct. at 2693. To suggest otherwise would reduce the United States Supreme Court to a liar. The United States Supreme Court was so egger to open the door to these matters, they need to have the opportunity to open it in a non-hypocritical fashion for the sake of the integrity of the judiciary. The United States Supreme Court and the Presidency are being viewed with such extreme contempt that the President has taken measures to silent the voice of political opponents, through reprisal mechanism, like commissioning the IRS to target them and Hollywood entities like A&E to fire them.

19. Under my particular set of facts: I can join the Plaintiffs' in alleging: The Anti-Recognition Laws discriminate on the basis of sexual orientation and therefore are subject to heightened

scrutiny. For example, the Defendants acknowledge that "Plaintiffs make an argument for why this Court should not follow . . . Sixth Circuit precedent" applying rational basis review to government action that discriminates on the basis of sexual orientation, Opp. at 13, but they offer no substantive response to Plaintiffs' argument. Neither will the Defendants be able to make a substantive argument to my position that attaches to and parallels the Plaintiffs identically. The interest of justice commands intervention.

20. **ARGUMENT:** The Plaintiffs argue: *Bowers v. Hardwick,* 478 U.S. 186 (1986) was overruled by *Lawrence,* and those cases are also irreconcilable with the Supreme Court's application in *Windsor* of "careful" review of the state's asserted justifications for a law that discriminates against couples who are not merely a man and a woman. Accordingly, this Court should follow more recent Supreme Court authority, rather than older circuit cases that are "irreconcilable" with that Supreme Court precedent. *See Sierra Club v. Korleski*, 681 F.3d 342, 352 (6th Cir. 2012); *see also Golinski v. U.S. Office of Pers. Mgmt.,* 824 F. Supp. 2d 968, 983 (N.D. Cal. 2012).

**APPLICATION:** My relationship does not "merely involve a man and a woman." Therefore, the Court should allow for intervention so that the interest of the people in my class will not be left behind by the pro-gays, who will not fight for our interest with equal vigor. They confess that morality is of no concern, so why should they consider our interest fully. Just like, I do not see my friends at Naris/the Grammys foundation surprising its audience with people marrying their computers, blow up dolls, and pets at the 57th award show, I do not foresee the Plaintiffs having the zeal to argue the interest of other less vocalized sex classes. Although our Nation is headed in

the direction, we are not entirely there yet.   In the case of defending discrimination against

religion, the Court could not legitimately expect Islam advocates to represent the interest of Jews

with the same zeal, when the Islam religion demands that Islamic followers are vastly superior to

the zionists (even though all of the evidence shows that Mohammad was merely a malicious

politician and a dishonest vessel of evil like Hitler). Such common sense applies here in this

case.

21.  Defendants assert that "Plaintiffs cannot have it both ways" by arguing that the Anti-

Recognition Laws discriminate on the basis of both sexual orientation and gender, Opp. at 13,

but laws that discriminate against gay sex proponents properly may be viewed as discriminating

on both of these bases at the same time. This argument applies squarely to my case. The only

different is that I am referring to sex with a different object of sexual desire. Human beings are

sexual entities. Likewise, an Apple computer that is rife with pornography is an equal sexual

entity, according to the Plaintiffs' arguments.

22.  **ARGUMENT (On Gender):** When it comes to the question of sex on the basis of gender.

The Plaintiffs are effectively alleging that gender neutrality persons are a protected class of

persons.  Who could argue that hermaphrodites, like Jamie Lee Curtis, are subject to

discrimination because they were born with both male and female reproductive organs? The

Plaintiffs offer: "Sexual orientation is a relational concept that is defined by whether a person is

attracted to persons of the same gender, the opposite gender, both, to include attraction to beasts

and inanimate objects. Because the very concept of sexual orientation incorporates a gender-

based framework, recognizing that discrimination against same-sex couples discriminates on

both sexual orientation and gender is logical.

APPLICATION: But wait! To continue this "logical" analysis, the principles of intervention necessitate that attraction to beasts and inanimate objects be factored into this continuing analysis. Computers are as equally gender neutral as same sex or bi-sexual proponent. *See Golinski,* 824 F. Supp. 2d at 982 n.4. Yet, thanks to the relentless efforts of Apple's predatory pornographer alliance and the governments non-responsiveness, sex with genderless persons and sex with genderless object equally provide the opportunity for sexual orgasm and the release of identical neuro-chemicals in the brain that cause bonding and the structuring of the reward cycle.

Moreover, discrimination based on sexual orientation and discrimination based on gender are both rooted in gender stereotypes, including the stereotype that a man should only be attracted to, enter into an intimate relationship with, and marry a woman, and vice versa. Which could be considered to be nonsense by the Plaintiffs. A person can be attracted to and enter into a relationship with a person of the same sex, a beast, or an inanimate object. There is a reason why the porn industry is a 97 billion dollar industry. There is good reason why the internet is rife with people having sex with animals. The blow up doll industry is thriving for good cause. Intervention better completes the Plaintiffs "logical argument." It makes the Nation put up or shut-up between the utilitarian fight between Christianity and hedonism. For the Court to prohibit the Plaintiffs to make an incomplete argument is a flagrant act of cruelty to the Defendants, the Plaintiffs, the United States Supreme Court, the President's agenda, and Democracy itself. Partial protection of one subsection of an isolated sexual orientation class with one set of particular tastes is prejudicial discrimination towards all other existing classes,

compounding injuries and defending the purpose of this entire action.

23.   **IDENTICAL PROCREATION ARGUMENTS:** The Plaintiff's assertion that "responsible procreation" argument failed to "explain how denying benefits to same-sex couples will reinforce heterosexual marriage");; *Varnum v. Brien*, 763 N.W.2d 862, 901 (Iowa 2009) applies equally to my case. Intervention is warranted. I should have the equal right as champions of gay behavior to assert as they have that:

 *the ("[T]he County fails to address the real issue in our required analysis of the objective: whether exclusion of gay and lesbian individuals from the institution of civil marriage will result in more procreation?") (emphasis in original) to the case that all sexual orientation classes must be protected, not just theirs. The fact that same-sex couples procreate only through planned conception or adoption does not provide a rational basis for excluding those couples and their children from the many protections marriage provides.*

**APPLICATION:** Such an argument applies equally to those of us who were forced into a sexual relationship with an inanimate object that we have decided to marry instead of facing life alone. We cannot procreate just like the gays. Therefore, the Defendants cannot discriminate against us on that basis in the same manner, as the Plaintiffs have asserted.  The fact that same-sex justifiers and sex with objects advocates procreate only through planned conception or adoption does not provide a rational basis for excluding those couples and their children from the many protections marriage provides.  Indeed, the asserted governmental interest in encouraging procreation and child-rearing to occur within the stable family context that marriage provides applies just as strongly to same-sex proponents, [sex with objects enthusiasts], single parents, and their children

as it does to opposite-sex couples. *See Pedersen v. Office of Pers. Mgmt.*, 881 F. Supp. 2d 294, 339 (D. Conn. 2012); *In re Marriage Cases,* 43 Cal.4th 757, 828, 183 P.3d 384, 433 (2008).

The state of Tennessee cannot take away my naturally born child because I was tricked into masturbating to pornography because Apple is greedy and Eric Holder, non responsive, any more than the Plaintiff's adopted children can be taken away because they regularly molest one another with regularity and expect the rest of society to afford them with social and legal equal dignity.

24.     **ARGUMENT**: The fact that same-sex proponents and sex with objects enthusiasts do not engage in unplanned procreation does not provide a rational basis for excluding married same-sex proponents and marriage persons between man an inanimate sexual object from all of the other protections provided to married couples under Tennessee law. "[E]ven in the ordinary equal protection case calling for the most deferential of standards, [courts] insist on knowing the relation between the classification adopted and the object to be attained." *Romer v. Evans*, 517 U.S. 620, 632 (1996).

**APPLICATION:** I can join the Plaintiffs in their argument and add: the Defendants' "responsible procreation" argument fails to provide even a rational justification for Tennessee's refusal to recognize the marriages of same-sex proponents, [sex with animals activists, and sex with objects enthusiasts,] let alone a justification strong enough to overcome the Anti-Recognition Laws' "purpose and effect to disparage and to injure" those couples and their children, as *Windsor* requires. 133 S. Ct. at 2696.

22. Like the Plaintiffs, my claims are not time barred: "'[t]he continued enforcement of an

unconstitutional statute cannot be insulated by the statute of limitations.'" *Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) (citations omitted). So, the Defendants cannot attempt to maliciously block my intervention for this reason.

25.     I can join the Plaintiffs in their position that: "The Plaintiffs' continuing injuries would be avoided if Defendants ceased enforcement of the Anti-Recognition Laws, thereby enabling Plaintiffs to have the same protections available to all other married persons in Tennessee and to have their marriages treated with 'equal dignity.'" (*Windsor*, 133 S. Ct. at 2693) applies to me.

26.  Given the undisputed importance of marriage, it is evident that Tennessee's refusal to recognize Plaintiffs' legal marriages, like legalized marriages to an animal, and legalized marriages to an object once they moved to Tennessee causes them irreparable harm. The state's rejection of Plaintiffs' most significant relationship stamps them as inferior and sends a message to their children that their parents' love is unworthy of recognition in the eyes of the state. The same applies to myself. Or otherwise, just because we call something love, does not mean that it is "love" in the same way that just because we call something "marriage," does not mean that it is "marriage." But these definitions have no weight, when compared to those of us who want what we want because we want it. All hail, this is the new America!  Working to rewrite the law to meet our personal desires and addictions is at the heart of this action, and the new American way under the leadership of President Obama. When some of the first married gay couple in California got divorced, the defendant in the divorce proceeding argued that "the marriage was not really marriage," since the Plaintiffs have argued that morality does not matter only our personal interest, such shifting to meet a personal desire cannot provoke shock and awe.

Just like the Plaintiff, I can assert that the damage is real and cognizable. The cause of action accrued when I was rejected by the Tennessee's clerk's office, being thrown on the street with my Apple computer for attempting to marry it in the same way that gay people and animal lovers have attempted to marry their preferred marriage counterpart. Additionally, the damage occurred the instance that another permitted the marriage legally, but not the state of Tennessee. The Defendants must concede, as well, that my injury took place as did the Plaintiffs, the moment I entered Tennessee with my new marriage partner, and as the Supreme Court has made clear. *See Windsor*, 133 S. Ct. at 2694.

27. Like in the case of the Plaintiffs, the Defendants can assert that I might only be entitled to monetary damages. This not really a matter of monetary damages. The Apple lawsuit is a matter of monetary damages. This is a action that reflects liability of the state and Federal Government for not acting to protect me from being stalked down by highly addicting content. Yet, the Defendants cannot suggest how the Court could place a monetary figure on the rejection of my legal marriage and the resulting stigma, humiliation, loss of privacy and autonomy, and exclusion form the hundreds of tangible rights and protections, simply because I want my non-procative sexual relationship with my smut filled computer to be equal to traditional marriage, like the same sex proponents want their practice of molestation to be protection with legal dignity, regardless of how the law adjustment would impact innocent children, who have yet to have sexual experiences.

28. If the Plaintiffs' injuries are more than "speculative," then so are mine for identical reasons. Drs. Tanco and Jesty, may be expecting a child that is not the biological product of their sex to a

lesser extent than the fact that my son is not the biological product of my sex with my new

mechanical-replacement-sexual-marriage partner. I am subjected to greater irreparable harm

under these conditions than Drs. Tanco and Jesty in light of their own arguments. According to

the Plaintiff's logic, my biological son is impacted by my synthetic marriage. A man and woman

legally married in another state would never have to worry about any of these issues with their

children, their home, or their spouse. Like it is with the Plaintiffs, it is equally applicable to me

and my filterless Apple product. Intervention must be allowed.

Like the Plaintiffs, I must go through burdensome efforts to obtain even a small fraction

of the rights and benefits that automatically are bestowed upon opposite-sex couples married in

other states shows irreparable harm.Like the Plaintiffs, I will suffer irreparable injury if the

requested relief is not granted. By contrast, Tennessee will not suffer any countervailing harm.

As equally applicable to the Plaintiffs as myself, the case of *Alabama Public Service*

*Commission v. Southern Railway Co.*, 341 U.S. 341 (1951), did not establish, as Defendants

assert, that "the public interest favors federal courts denying extraordinary injunctive relief that

may affect state domestic policy." So, given prudential standing requirements and other standing

issues that could be raised, my prayer for intervention is grounded in unwavering legal basis.

## **INTERVENTION IS NOT PREJUDICIAL**

Granting permissive intervention is appropriate here because both the existing Plaintiffs

and I seek the same declaratory judgment based on the same facts. No dispositive pretrial

motions have been filed. There would be no prejudice to the Plaintiffs or the Defendants. First, I

am going to join the Plaintiffs in their motion for a preliminary injunction. Next, I'll file a brief

that mirrors the Plaintiffs' brief of injunctive relief identically. Our interest align identically. The Defendants will be reading nearly the exact same brief, the only key distinction is that I am asking that my marriage to my metallic object of desire be recognized with the same force of law that the Plaintiffs have very cleanly laid out in a straight forward fashion through the application of the laws to met their requests.

In fact, I believe that the Defendants are not even interested in opposing my motion to intervene whatsoever. This is not the first time I have been at terminal odds with the Attorney General's office in a Constitutional matter. (See the remanded lawsuit against Nancy Jones and Krisann Hodges, lodged originally before Judge Campbell and refiled in State Court before the Honorable Senior Judge Harris). It is impossible for the Plaintiffs to object to my intervention, since to do so would expose them as fraudulent-judgmental-self-absorbed-narcissistic hypocrites, who are the true bigots in this matter. Such a thought would be unthinkable, from loving Plaintiffs, many of whom are parents, as am I, whose entire argument rides on the back of equal protection on the basis of sexual orientation under the law. Accordingly, the evidence suggests that my request to intervene is appropriate whether as a mandatory intervention under Rule 24(a) of the Federal Rules of Civil Procedure or a permissive intervention under Rule 24(b) of the Rules of Civil Procedure.

## **CONCLUSION:**

There is one point that the Plaintiffs, the Defendants, AMicus Curiae, and those like me who are having sex with their Apple computer can all agree: Marriage is a unique institution that plays a central social, legal, and economic role in American society. There are countless other

examples of how my interest parallel the Plaintiffs and demonstrate why intervention must be

permitted.

Respectfully Submitted,


**/s/Chris Sevier/**

9 Music Square South 247

Nashville, TN 37203

615 500 4411

BPR#026577

ghostwarsmusic@gmail.com

*Matthew 5:6: Blessed Are those who Hunger and Thirst for Righteousness, for they will be filled.*


## CERTIFICATE OF SERVICE


The motion was filed with the clerk's office and served on all of the parties through ECF
PACER. Additionally, I emailed each of the parties a copy of this motion to the following official
ECF PACER addresses:

sminter@nclrights.org, cstoll@nclrights.org, aorr@nclrights.org, arubenfeld@rubenfeldlaw.com,
bharbison@sherrardroe.com pcramer@sherrardroe.com, shickman@sherrardroe.com,
jfarringer@sherrardroe.com, mtholland@aol.com, lambertregina@yahoo.com,

Copies of these documents were served with adequate posting to the following addresses;


Martha A. Campbell
Kevin G. Steiling
Tennessee Attorney General's Office General Civil Division
Cordell Hull Building, Second Floor P. O. Box 20207

Nashville, Tennessee 37214 martha.campbell@ag.tn.gov kevin.steiling@ag.tn.gov

*Attorneys for Defendants*


*/s/ Shannon P. Minter*

Shannon P. Minter (CA Bar No. 168907)

Christopher F. Stoll (CA Bar No. 179046)

Asaf Orr (CA Bar No. 261650)

NATIONAL CENTER FOR LESBIAN RIGHTS

870 Market Street, Suite 370 San Francisco, California 94102

Tel.: (415) 392-6257
Fax: (415) 392-8442 sminter@nclrights.org

cstoll@nclrights.org

aorr@nclrights.org
*Admitted Pro Hac Vice*

*/s/ William L. Harbison*

William L. Harbison (B.P.R. No. 7012)

Phillip F. Cramer (B.P.R. No. 20697)

J. Scott Hickman (B.P.R. No. 17407)

John L. Farringer IV (B.P.R. 22783)

SHERRARD & ROE, PLC

150 3rd Avenue South, Suite 1100 Nashville, Tennessee 37201
Tel.: (615) 742-4200

bharbison@sherrardroe.com

pcramer@sherrardroe.com

shickman@sherrardroe.com

jfarringer@sherrardroe.com

*/s/ Abby R. Rubenfeld*

Abby R. Rubenfeld (B.P.R. No. 6645)

 RUBENFELD LAW OFFICE, PC

2409 Hillsboro Road,

Suite 200 Nashville, Tennessee 37212

Tel.: (615) 386-9077

Fax: (615) 386-3897 arubenfeld@rubenfeldlaw.com

*/s/ Maureen T. Holland*

Maureen T. Holland (B.P.R. No. 15202)

 HOLLAND AND ASSOCIATES, PLLC

1429 Madison Avenue

Memphis, Tennessee 38104-6314

Tel.: (901) 278-8120 Fax: (901) 278-8125

mtholland@aol.com *Admitted Pro Hac Vice*

**/s/Chris Sevier/**

9 Music Square South 247

Nashville, TN 37203

615 500 4411

BPR#026577

ghostwarsmusic@gmail.com

*Matthew 5:6: Blessed Are those who Hunger and Thirst for Righteousness, for they will be filled.*



SIGNATURE PAGE FOR THE FILING

/s/Chris Sevier
9 Music Square South
Nashville, TN 37203
615 500 4411
ghostwarsmusic@gmail.com
soundcloud.com/ghostwars



SIGNATURE PAGE FOR THE CERTIFICATE OF SERVICE

/s/Chris Sevier
9 Music Square South
Nashville, TN 37203
615 500 4411
ghostwarsmusic@gmail.com
soundcloud.com/ghostwars

