UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VALERIA TANCO and SOPHIE JESTY, *et al.*,  )
)
    Plaintiffs,  )
)    Case No. 3:13-cv-01159
v.  )    Judge Aleta A. Trauger
)
WILLIAM EDWARD "BILL" HASLAM, *et al.*,  )
)
    Defendants.  )

# MEMORANDUM & ORDER

On March 14, 2014, the court issued a preliminary injunction barring the defendants and those under their supervision from enforcing Tenn. Code Ann. § 36-3-113 and Art. XI., § 18 of the Tennessee Constitution (collectively, the "Anti-Recognition Laws") against the six named plaintiffs in this action. (*See* Docket Nos. 67 (Memorandum), 68 (Order), and 69 (Preliminary Injunction).) On March 18, 2014, the defendants filed (1) a Notice of Appeal to the Sixth Circuit (Docket No. 74) and (2) a Motion to Stay the Preliminary Injunction pursuant to Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a) (Docket Nos. 72 (Motion) and 73 (Memorandum of Law)), to which the plaintiffs have filed a Response in opposition (Docket No. 77). In their Motion to Stay, the defendants ask the court to stay the Preliminary Injunction pending resolution of the merits of their appeal or, in the alternative, to stay the Preliminary Injunction for 21 days to allow the defendants to pursue a similar request for relief before the Sixth Circuit.[1]

---

[1] Under Fed. R. App. 8(a)(1), "[a] party must ordinarily move first in the district court for . . . (C) an order suspending, modifying, restoring or granting an injunction while an appeal is pending." Under Fed. R. Civ. P. 62(c), "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction

1

**STANDARD FOR MOTION TO STAY PENDING APPEAL**

When considering a stay pending appeal, a court must consider "the traditional factors governing injunctive relief," including "(1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). Furthermore:

> These factors are to be balanced. The strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. However, in order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.

*Id.*

In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). The Sixth Circuit has provided additional guidance for evaluating the degree of injury to a defendant:

> In evaluating the degree of injury, it is important to remember that:
>
>> [t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are

---

on terms for bond or other terms that secure the opposing party's rights." In substance, absent a showing that moving first in the district court would be impracticable (*see* Fed. R. App. P. 8(a)(2)(A)(i)), defendants may not seek a stay from the appellate court unless and until they have moved for and been denied such relief by the district court.

> not enough. The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in the
> ordinary course of litigation, weighs heavily against a claim
> of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 []
> (1974)).
>
> In addition, the harm alleged must be both certain and immediate, rather
> than speculative or theoretical. In order to substantiate a claim that
> irreparable injury is likely to occur, a movant must provide some evidence
> that the harm has occurred in the past and is likely to occur again.
>
> Of course, in order for a reviewing court to adequately consider these four
> factors, the movant must address each factor, regardless of its relative
> strength, providing specific facts and affidavits supporting assertions that
> these factors exist.

*Griepentrog*, 945 F.2d at 154 (certain citations omitted, emphasis in original).[2]

## ANALYSIS

### I. Likelihood of Success on the Merits

The defendants argue that there is a "serious question" concerning the merits of the court's finding that the plaintiffs are likely to succeed on the merits, contending that the court erroneously failed to place the burden on the plaintiffs to show that the Anti-Recognition Laws lack a rational basis. However, as the court previously explained, (1) the post-*Windsor* courts have uniformly found that bans on the consummation and/or recognition of same-sex marriages are unconstitutional under rational basis review, (2) the court found the reasoning in those cases,

---

[2]*See also Grass Lake All Season Resort v. United States*, 2005 WL 3447869, at *3 (E.D. Mich. Dec. 15, 2005) (finding no irreparable injury to plaintiff from enforcement of district court judgment, where "there is no evidence provided" to support the plaintiff's contention that house would sell for an amount below the full and fair market value of the property); *S&M Brands, Inc. v. Summers*, 2006 WL 1804606, at *3 (M.D. Tenn. June 28, 2006) (finding no irreparable harm, where, among other deficiencies, defendant failed to provide evidentiary support for its allegations of irreparable harm).

3

particularly *Bourke v. Beshear*, to be persuasive,[3] and (3) the court found no basis to conclude that Tennessee's Anti-Recognition Laws would merit different treatment under the United States Constitution than the laws at issue in these other cases.

Moreover, in support of their Motion for Preliminary Injunction, the plaintiffs specifically argued that the following justifications did not constitute a "rational basis" for the Anti-Recognition Laws: "history and tradition," moral disapproval of same-sex marriage, the state's interest in fostering procreative activity, and the belief that married opposite-sex couples make better parents than same-sex couples. (*See* Docket No. 30 at p. 23.) None of these asserted grounds for an anti-recognition law or same-sex marriage ban has survived constitutional scrutiny in any federal post-*Windsor* decision. In its opinion granting the Preliminary Injunction, the court merely pointed out that the defendants, in referencing only the state's interest in procreation (which the plaintiffs specifically argued was not a rational basis for the Anti-Recognition Laws), had provided no new "rational basis" for discriminating against same-sex marriage that had not already been thoroughly and consistently discredited.

Of course, post-*Windsor*, no circuit court (let alone the Supreme Court) has yet issued an opinion addressing state laws that ban same-sex marriage or refuse to recognize legal same-sex marriages consummated in other states. Nevertheless, given the unanimity of opinion as to this point in district courts across the country, the court finds no "serious question" as to whether this court conducted an appropriate constitutional analysis in reaching essentially the same

---

[3] Following the intervention of additional plaintiffs after the court's judgment concerning Kentucky's anti-recognition laws, the case previously captioned as "*Bourke, et al. v. Beshear, et al.*" was modified to "*Love, et al. v. Beshear, et al.*." (*See* docket for *Love et al. v. Beshear, et al.*, 3:13-CV-750-H (W.D. Ky.), Docket No. 57.) For purposes of simplicity, the court will hereinafter refer to that case as "*Beshear*."

4

conclusion.

### B. Irreparable Harm

As to the second factor in the court's Rule 62 analysis, the defendants argue that the plaintiffs will not suffer irreparable harm or that, to the extent that they might suffer such harm, the harm is self-inflicted because of the plaintiffs' failure to take other measures to secure the rights at issue. The defendants also argue that the State of Tennessee suffers a form of irreparable harm from being forced not to effectuate a statute enacted by representatives of Tennessee's citizens. The defendants have not asserted any other form of alleged irreparable harm.

The appropriate focus of the court's inquiry is on whether the defendants will suffer irreparable harm from enforcement of the Preliminary Injunction. The court's injunction merely precludes Tennessee (at least temporarily) from enforcing its Anti-Recognition Laws against just *three couples* in Tennessee. Of course, if this court's conclusion that the plaintiffs will likely succeed in their challenge to the Anti-Recognition Laws turns out to be wrong, the State may have suffered some small affront to its sovereignty by being forced to recognize three particular same-sex marriages for a short period of time. That harm, even if arguably "irreparable," would not be substantial, and that harm is unlikely to occur in the first place, because the plaintiffs are likely to succeed. By contrast, as explained in the court's previous opinion, the harms to the plaintiffs from continued enforcement of the Anti-Recognition Laws would be substantial and irreparable. The court finds no reason to revisit that determination.

The defendants point out that, in other cases involving same-sex marriage, courts have

5

stayed the issuance of preliminary or permanent injunctions having statewide effect.[4]  However, the defendants are comparing apples and oranges.  Those cases all involved bans having *statewide effect*, which inherently created the possibility that implementation of the injunctions would motivate numerous third parties to seek and receive marriage licenses and/or to seek recognition of their out-of-state marriages.  Indeed, in the first of these cases, *Kitchen v. Herbert*, the district court declared that Utah's same-sex marriage law was unconstitutional, enjoined the state from enforcing the ban immediately, and refused to grant a stay of the court's injunction.[5]  Apparently, the County Clerk in Salt Lake City began issuing marriage licenses that afternoon.[6]  The Tenth Circuit similarly refused to grant a stay of the district court's order, at which point the defendants petitioned the Supreme Court for a stay of the district court's order.  According to media reports, over a thousand same-sex marriage licenses were issued in Utah between the date of the district court's order and the Supreme Court's summary ruling, on January 7, 2014, that the

---

[4]*See Herbert v. Kitchen*, No. 13A687, 571 U.S. – , 2014 WL 30367 (Jan. 6, 2014) (staying enforcement of district court's permanent injunction against Utah's same-sex marriage ban in *Kitchen v. Herbert*, No. 2:13-cv-217 (D. Utah)); *De Leon v. Perry*, No. SA-13-CA-00982-OLG, – F. Supp. 2d – , 2014 WL 715741, at *27-28 (W.D. Tex. Feb. 26, 2014) (staying preliminary injunction against enforcement of Texas same-sex marriage ban and anti-recognition laws); *Bostic v. Rainey*, Civil No. 2:13-cv-395, – F. Supp. 2d –, 2014 WL 561978, at *23 (E.D. Va. Feb. 13, 2014) (staying injunction against Virginia same-sex marriage ban and anti-recognition laws); *Bishop v. U.S. ex rel. Holder*, No. 04-cv-848-TCK-TLW, – F. Supp. 2d –, 2014 WL 116013, at *33 (N.D. Okla. Jan. 14, 2014) (staying injunction against enforcement of Oklahoma same-sex marriage ban); *see also Beshear* Docket No. 71 (staying implementation of court order striking down Kentucky anti-recognition laws).

[5]*See Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013); *Kitchen v. Herbert*, 2013 WL 6834634 (D. Utah Dec. 23, 2013).

[6]*See* Tenth Circuit docket in *Kitchen v. Herbert*, No. 13-4178 (10th Cir.), Emergency Motion for Temporary Stay, filed Dec. 23, 2013, at p. 5 ("As widely reported by the press, after the district court issued its decision the Salt Lake County Clerk immediately began issuing marriage licenses to same-sex couples and same-sex couples were married Friday afternoon.")

district court's order would be stayed pending appeal.[7]

Subsequently, in *Bostic*, *De Leon*, *Bishop*, and *Beshear*, each court issued an injunction that, like the district court's order in *Kitchen*, would have had statewide effect. In light of the Supreme Court's stay in *Kitchen*, which essentially halted the "rush to marry" by (apparently) thousands of same-sex couples in Utah, the courts in *Bostic*, *De Leon*, *Bishop*, and *Beshear* stayed orders in their cases as well.[8]

Here, unlike in *Kitchen*, *Bostic*, *De Leon*, *Bishop*, and *Beshear*, the court's order does not open the floodgates for same-sex couples to marry in Tennessee, nor does it require Tennessee to recognize all legal same-sex marriages performed outside of Tennessee. Instead, the Preliminary Injunction applies only to the three same-sex couples at issue in this case. There is no immediate risk of administrative or legal chaos from implementation of the court's narrow injunction; nor, for that matter, does the government even contend that such risk inheres in the implementation of the court's narrow injunction.

### C. Injury to Other Interested Parties

The defendants have not identified any potential injury to "other interested parties," let

---

[7]*See* www.nytimes.com/2014/01/09/us/utah-governors-office-says-state-wont-recognize-same-sex-marriages.html?_r=0 (Jan 8, 2014) (stating that "about 1,300 same-sex couples" obtained marriage licenses before the Supreme Court's stay); www.usatoday.com/story/news/nation/2014/01/08/utah-same-sex-marriages-not-recognized/4372657/ (Jan. 8, 2014) (stating that Utah would refuse to recognize the "1000-plus same-sex marriages performed in the state since Dec. 20")

[8]For example, as stated in a recent Memorandum and Order in *Beshear*, which struck down Kentucky's anti-recognition laws as unconstitutional, the government argued that enforcement of the court's judgment could result in "chaos," including "the potential granting and then taking away of same-sex marriage recognition to couples," as well as the potential impacts on "businesses and services where marital status is relevant, including health insurance companies, creditors, [and] estate planners." Judge Heyburn stated that these considerations presented a "legitimate concern." (*See Beshear,* Docket No. 71.)

alone "substantial injury," that would result from continued enforcement of the Preliminary Injunction. *See Baker*, 310 F.3d at 928. By contrast, as this court previously found, the injury to the plaintiffs from continued enforcement of the Anti-Recognition Laws against them would be substantial and irreparable for multiple reasons. Furthermore, although it is conceivable that Dr. Tanco and Dr. Jesty possess or could secure certain rights relative to the child they are expecting tomorrow, they are entitled to the full panoply of rights associated with marriage and the security and peace of mind that those rights will not be abrogated or denied (at least for the time being) relative to their family or their expected child. Moreover, they should not be required to jump through hoops to obtain some limited measure of security. Mr. Espejo and Mr. Mansell would suffer similar injuries relative to their children. And all of the plaintiffs will suffer the various other forms of irreparable harm described in the court's previous opinion.

> D. **The Public Interest**

The defendants have argued that preservation of the *status quo* best serves the public interest. This argument, in and of itself, is insufficient. As the plaintiffs point out, any court that enjoins enforcement of an unconstitutional state law necessarily disturbs the *status quo*. Indeed, where a district court had found a Michigan law unconstitutional and enjoined its enforcement, the Sixth Circuit denied a motion by the defendants for a stay pending appeal. *See U.S. Student Assoc. Found. v. Land*, 546 F.3d 373 (6th Cir. 2008); *see also United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (criticizing reliance on the "*status quo*" and upholding injunction requiring defendant to accept plaintiff's advertisement, where plaintiff was likely to prevail on First Amendment claim premised on defendant's previous refusal to accept the ad). Of course, disturbing the *status quo*

8

relative to an entire state could implicate sufficiently serious public interest concerns, such as the risk that Judge Heyburn perceived in *Beshear* from implementing an injunction with "dramatic effects" that could sow "undue confusion" and create "confusing changes" regarding the rights of many people.  (*Beshear* Docket No. 71.)  However, for the reasons previously described, those concerns are not present here.  Moreover, as the court explained in its previous opinion, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

### E. Balancing of the Factors

The court finds that all four factors weigh against a stay and in favor of continuing enforcement of the Preliminary Injunction.  Even if the court were to accept that there is arguably a "serious question" about the merits of its constitutional analysis, the defendants have not even approached their burden to show "irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted."  *Baker*, 310 F.3d at 928.

Therefore, for the reasons stated herein, the Motion to Stay is hereby **DENIED**.

It is so **ORDERED**.

Enter this 20th day of March 2014.

_____
ALETA A. TRAUGER
United States District Judge