UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VALERIA TANCO and SOPHIE JESTY, | ) | |
| IJPE DeKOE and THOMAS KOSTURA, | ) | |
| and JOHNO ESPEJO and MATTHEW | ) | |
| MANSELL, | ) | **Case No. 3:13-cv-01159** |
| | ) | **Judge Aleta A. Trauger** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM EDWARD "BILL" HASLAM, as | ) | |
| Governor of the State of Tennessee, in his | ) | |
| official capacity; LARRY MARTIN, as | ) | |
| Commissioner of the Department of Finance and | ) | |
| Administration, in his official capacity, and | ) | |
| ROBERT COOPER, as Attorney General & | ) | |
| Reporter of the State of Tennessee, in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court is the plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses (Docket No. 98), to which the defendants filed a Response in opposition (Docket No. 122), and the plaintiffs filed a Reply (Docket No. 129). For the reasons stated herein, the motion will be granted in part and denied in part.

## BACKGROUND

This motion requires the court to decide the appropriate amount of attorney's fees and expenses to be awarded to counsel for the prevailing party plaintiffs in a landmark civil rights case about the legal recognition of same-sex marriage that garnered worldwide attention. The plaintiffs in this action were successfully represented by Abby L. Rubenfeld ("Rubenfeld") of the

1

Rubenfeld Law Office, PC located in Nashville; Maureen T. Holland ("Holland") of Holland and Associates, PLLC located in Memphis; Regina M. Lambert, Esq. located in Nashville; the National Center for Lesbian Rights ("NCLR") located in San Francisco; Sherrard & Roe, PLC ("Sherrard & Roe") located in Nashville; and Ropes & Gray LLP ("Ropes & Gray"), an international law firm with offices in Washington, D.C.

The plaintiffs have set forth a detailed procedural history of this matter in both their affidavits and briefing, and the defendants do not seriously dispute the plaintiffs' version of events. (*See* Docket No. 106 at pp. 4-7; Docket No. 97-2.) The plaintiffs filed their Complaint for Declaratory and Injunctive Relief on October 21, 2013. On November 19, 2013, days after the defendants filed their Answer to the Complaint, the plaintiffs filed a Motion for Preliminary Injunction, a supporting memorandum and eight supporting declarations. The motion was opposed by the defendants and an *amicus curiae*. After the plaintiffs' counsel prepared and filed a reply brief and several notices of supplemental authority, this court issued a Memorandum Opinion granting the plaintiffs' motion on March 14, 2014. (Docket No. 67.) The defendants appealed the preliminary injunction on March 18, 2014 and moved the court to stay its injunction. The plaintiffs' counsel filed a response to the defendants' stay motion. After this court denied the defendants' motion, the defendants filed a similar motion in the Sixth Circuit that was also briefed by the parties.

Once on appeal, the case was consolidated for argument by the Sixth Circuit with cases from Kentucky, Ohio and Michigan. The Sixth Circuit heard oral argument on these cases on August 6, 2014. The oral arguments, which lasted three hours, required extensive preparation and drew intense attention from the news media. In its opinion released on November 6, 2014,

2

the Sixth Circuit upheld the Tennessee anti-recognition laws, as well as similar marriage and recognition bans in the other states.  *See Deboer v. Snyder*, 772 F.3d 388 (6th Cir. 2014).  In doing so, the Sixth Circuit created a circuit split by becoming the only federal court of appeals to uphold such marriage bans.  The issuance of the opinion set off an intense and unprecedented period of activity and coordination by and among the plaintiffs' counsel and attorneys representing plaintiffs in Ohio, Michigan, and Kentucky.

The plaintiffs' counsel decided that, because of the immediate nature of the harms for the plaintiffs, the plaintiffs in the consolidated cases would be best served if the matter could be heard in the Supreme Court as soon as possible.  In order to preserve the possibility of having the cases heard during the 2014-15 term, the plaintiffs' counsel prepared and filed a petition for *certiorari* on November 14, 2014.  The plaintiffs' counsel accomplished this task in eight days after the issuance of the Sixth Circuit opinion; Supreme Court rules normally allow ninety days. In order to prepare and file the petition, and to provide guidance and assistance in the event the petition was granted, the plaintiffs' counsel engaged a highly experienced Supreme Court litigator at the Ropes & Gray office in Washington, D.C., Douglas Hallward-Driemeier. Plaintiffs' counsel determined that, because the Supreme Court is a unique institution with a set of rules, practices, and procedures unlike those of the district and circuit courts, the experience and insight of experienced Supreme Court practitioners were necessary.

The Supreme Court granted *certiorari* in all four cases from the Sixth Circuit on January 16, 2015.  *Obergefell v. Hodges*, 135 S. Ct. 1039 (2015).  Between that day and the oral argument in late April, this case was the chief focus of the plaintiffs' counsel.  Moreover, while the Supreme Court ordered separate briefing from each state, the case was consolidated (and

limited to two oralists) for purposes of argument. Accordingly, preparation included extensive coordination between all the lawyers on all four teams, as well as with the Office of the Solicitor General of the United States (who sided with the plaintiffs in this case), along with internal moot and strategy sessions.

Given that *certiorari* was granted relatively late in the term, expeditious briefing was required. The plaintiffs' principal brief was due and filed on February 27, 2015. The defendants' response was due and filed on March 27, and the plaintiffs filed their reply on April 17. Preparations for oral argument occurred simultaneously with the briefing process and included multiple moot arguments with experienced constitutional law specialists. The case was argued on April 28, 2015, with Mr. Hallward-Driemeier of Ropes & Gray arguing the recognition question on behalf of all same-sex couples in the various cases, including the named plaintiff from Ohio, Mr. Obergefell. Many of the other plaintiffs' counsel claim to have spent the entirety of the week leading up to the argument in Washington D.C., assisting Mr. Hallward-Driemeier in his preparations and attending and providing input into the moot arguments that occurred at Howard Law School, Georgetown University, and the Office of the Solicitor General of the United States.

## ANALYSIS

In the absence of special circumstances that would render an award unjust, a district court not merely "may," but "must" award attorney's fees to a prevailing party in a civil rights action brought under Section 1983. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760-61 (1989); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); 42 U.S.C. § 1988(b). Furthermore, "[w]here a plaintiff has obtained excellent results, his attorney should recover a

4

fully compensatory fee." *Hensley*, 461 U.S. at 435. In this way, Section 1988 "mak[es] it possible for persons without means to bring suit to vindicate their rights." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). Notably, a fully compensatory fee is one that is "traditional with attorneys compensated by a fee-paying client." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (citing S. Rep. No. 94–1011, p. 6 (1976).) "It is central to the awarding of attorney's fees under [Section] 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989).[1] "The district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

The defendants do not challenge that the plaintiffs are the prevailing party, so the court moves to the reasonableness analysis. The court determines a reasonable fee by calculating the "lodestar" – multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A strong presumption exists that the lodestar represents a reasonable fee. *Blanchard*, 489 U.S. at 95. As an initial matter, as part of Exhibit 1 to their motion, the plaintiffs' counsel have listed their hourly rates. The plaintiffs have noted that their out-of-town counsel have discounted their rates to match the prevailing rates in the Nashville area. In their Response, the defendants have not taken issue with any of these rates. The court has reviewed the rates and finds them to be reasonable for attorneys of comparable quality and experience in the Nashville area. *See Jenkins by Agyei*, 491

---

[1] Of course the district court's intimate personal knowledge of the efforts expended by counsel at the district court level does not extend to their work at the appellate level. For those assessments, the court must rely on the filings and argument presented.

5

U.S. at 286 ("A reasonable attorney's fee is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.*, in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").  The only issue under debate between the parties, therefore, is the number of hours reasonably expended on this litigation.

Although this court enjoys wide discretion in awarding attorney's fees, the court is guided by a concern for reasonableness. *Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005); *see also Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015).  The court must strive to reimburse the successful plaintiff, but not overcompensate the lawyers for their efforts. *See Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999).  The award should "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue,* 559 U.S. at 551.  The court should not grant a fee award for hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34; *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994).  "[C]ourts must remember that they do not have a mandate . . . to make the prevailing counsel rich."  *Reed*, 179 F.3d at 472 (quoting *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)).

## I.       The Plaintiffs' Request

The plaintiffs are seeking reimbursement for 5,974.5 hours of time expended in this litigation, for a basic lodestar value of $2,333,095.63, when calculated at the billing rates of the attorneys involved.  This represents 325.7 hours for Rubenfeld ($162,850); 235.35 hours for Holland ($91,786.50); 498.2 hours for Lambert ($149,460); 1,328.9 hours for the NCLR

6

($576,867); 1,477.85 hours for Sherrard & Roe ($674,557.25); and 2,108.5 hours for Ropes & Gray ($677,574.88). The plaintiffs also seek reimbursement for $65,555.37 in statutory costs and other expenses.

In support of this request, each of plaintiffs' counsel have submitted time entries that are, generally speaking, highly detailed. For example, the time entries for Sherrard & Roe extend over more than sixty pages. The plaintiffs have also submitted personal affidavits from each of the lead plaintiffs' counsel at each firm that state the belief that the hours expended litigating this dispute are reasonable. (*See* Docket Nos. 97-1, 97-2, 97-3, 97-4, 97-5, 97-6, 97-8.) Moreover, the plaintiffs have also submitted the affidavits of four locally and nationally prominent attorneys – including the current President of the Nashville Bar Association and a former U.S. Attorney for the Middle District of Tennessee – who have reviewed the requested hours and find them to be reasonable and necessary, given the nature and scope of this civil rights case. (*See* Docket Nos. 97-9, 97-10, 97-11, 97-12.)

In addition, the plaintiffs contend that the reasonableness of their fee request is bolstered by the fact that they have proactively reduced their billed time. The plaintiffs' counsel maintain that they have "made reductions in their time in accordance with the same careful review of billing records that they perform before sending a bill to a fee-paying client." (Docket No. 106 at p. 10.) For example, plaintiffs' counsel assert that they have not billed for any paralegal or law clerk time and that numerous attorneys have reduced their billed time by 100 hours each. Finally, Ropes & Gray maintains that it did not bill at all for the 171 hours that high-level attorney Justin Florence spent working on the Supreme Court phase of the case. All of this is extremely laudatory and appreciated by the court.

7

## II.    Defendants' Objections

The defendants oppose the plaintiffs' fee request on several grounds, the most significant of which is overstaffing and duplication of effort. The defendants maintain that "this case has been significantly overstaffed since its inception," ranging from 12 attorneys at the time of the filing of the Complaint to 19 attorneys after the loss at the Sixth Circuit. (Docket No. 122 at p. 4.) The defendants argue that these counsel necessarily duplicated efforts. The defendants rely upon the principle that the plaintiffs are "not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job," *Kentucky Rest. Concepts, Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004), and highlight the fact that eight attorneys attended oral argument before the Sixth Circuit and twelve attorneys attended argument at the Supreme Court, hardly justifiable as billed hours by all of them. The defendants further argue that juxtaposing the plaintiffs' fee application against those of plaintiffs' counsel in Michigan, Kentucky, and Ohio – where fewer attorneys were utilized and lower fees requested – demonstrates that the fee application here is unreasonable in both hours billed and attorneys retained. The defendants also contend that the fee entries of plaintiffs' counsel contain excessive and unnecessary legal and non-legal activities. Finally, the defendants argue that interpretation of the time entries is complicated by the use of block billing and vague language.

The defendants also singled out some instances of counsel-specific alleged unreasonable billing that the court will detail below.

### A.    Rubenfeld – Personal Counsel for the Nashville Plaintiffs

The defendants contend that Rubenfeld's descriptive fee entries lack necessary

8

information to enable the court to evaluate their reasonableness, claiming that entries such as "e-mails to co-counsel", "e-mails regarding plaintiffs and strategy", and "team conference call" are too vague to permit the court's reasonableness review. Moreover, the defendants argue that Rubenfeld improperly "block bills" by including multiple activities under one total time. For example, on October 21, 2013, Ms. Rubenfeld billed for "Press conference, review and sign petition, meet w/counsel, email(strategy)" for a total of 6.5 hours. (Docket No. 97-3, Ex. B). As another example, on July 4, 2013, Ms. Rubenfeld billed for "Research; draft complaint; e-mails to potential plaintiffs" under one total time. (*Id*.)

### B. Holland and Lambert – Personal Counsel for the Memphis and Knoxville Plaintiffs

The defendants argue that Holland and Lambert sometimes duplicated the efforts of Sherrard & Roe. In addition, the defendants contend that Holland appears to have performed less actual legal work than other plaintiffs' counsel and, rather, billed more time to joining in NCLR fundraisers, pride walks, and press conferences, hardly appropriate billable time. She also (unnecessarily, according to the defendants) traveled to the Sixth Circuit and Supreme Court arguments. The defendants take issue with Lambert, on the other hand, because she frequently traveled from Knoxville to Nashville to meet with Rubenfeld while seeking potential plaintiffs, worked as a press liaison in a manner that duplicated the work of others, and performed extensive publicity duties for which the defendants contend that it is inappropriate to seek reimbursement.

### C. NCLR

The defendants concede that "the time NCLR spent actually drafting the complaint and

preliminary injunction is reasonable." (Docket No. 122 at p. 11.) However, according to the defendants, a review of other NCLR entries reveals unreasonable billing for other reasons, specifically with regard to lead NCLR attorneys Shannon Minter and Christopher Stoll. The defendants have identified instances in which the NCLR allegedly spent multiple hours seeking the "perfect plaintiffs." Furthermore, the defendants have objected to overstaffing and duplicative work. For example, from October 19, 2013 to October 21, 2013, Mr. Minter billed 17.3 hours traveling to Nashville, meeting with the plaintiffs, meeting with counsel in Nashville, and traveling back to Washington D.C. (Docket No. 97-2, Ex. D at p. 3). The defendants highlight, however, that there were already three individual lawyers in Tennessee and at least four attorneys at Sherrard & Roe working on this case and conclude that the work by Mr. Minter was duplicative and unnecessary. In addition, from August 5, 2014 through August 6, 2014, (a) Mr. Minter billed 12.1 hours for traveling to and attending the Sixth Circuit argument (*id*. at p. 11), and Mr. Stoll spent 4.6 hours working on the oral argument before the Sixth Circuit and billed for his travel and attendance to the Sixth Circuit argument (*id*. at pp. 27, 32). The defendants also object to the fact that Mr. Minter and Mr. Stoll billed for attending the Supreme Court oral argument and the Supreme Court's announcement of its decision, for a total of 51.8 hours. (*Id*. at pp. 20 and 31-32.)

### D.  Sherrard & Roe – Local Counsel for All Three Sets of Plaintiffs

While NCLR took a primary role in drafting the district court documents in this case, Sherrard & Roe served as primary local counsel for all three sets of plaintiffs. The defendants object to a variety of work performed by Sherrard & Roe. For example, the defendants observe that "sprinkled through" the time entries are services related to press – as opposed to legal efforts

10

– that should not be compensated. (Docket No. 122 at p. 14.) The defendants similarly object to other client services work apparently performed for the plaintiffs – *e.g.*, birth certificate and insurance work – that is not directly related to the litigation. Finally, the defendants contend that multiple Sherrard & Roe time entries reflect unnecessary legal work. For example, on March 29, 2015, Mr. Harbison and Mr. Hickman, two members of the firm and primary counsel on this case for it, billed a total of 36.5 hours traveling to and from Ann Arbor, Michigan to participate in a moot court concerning licensure of same-sex marriages. (Docket No. 97-6, Ex. A at p. 45.) The defendants argue that, because the Tennessee plaintiffs challenged only the recognition of same-sex marriages, this travel was gratuitous and unnecessary.

### E. Ropes & Gray

The defendants have more limited objections to the time entries of Ropes & Gray, counsel of record for the plaintiffs in the Supreme Court. This firm had the primary responsibility for preparing and filing the petition for writ of *certiorari* and reply brief, drafting and filing the brief on the merits, drafting the reply brief, and presenting oral argument at the Supreme Court. (Docket No. 97-1, ¶ 9). First, defendants object to time spent researching, analyzing, and writing about the right to travel issue because the plaintiffs failed to prevail on this issue before this court, the Sixth Circuit, and the Supreme Court. Defendants also object to what they term unnecessary billing hours. For example, Mr. Hallward-Dreimeier billed for discussions regarding the Solicitor General's amicus brief, organizing meetings with him, and meeting with him. (Docket No. 97-1, Ex. A at pp. 4-25.) In addition, the defendants do not approve of the fact that several firm associates billed for attending the broadcast of the Supreme Court oral argument and one billed for attending the oral argument, hardly defensible as billable.

11

In sum, across the plaintiffs' counsel, the defendants have made several broad categories of objections: block billing/vagueness, press/media related activities, overstaffing, and overcoordination/travel. As a solution, the defendants suggest that the court should reduce the plaintiff's request to $1,066,903.55, which equates to 47.7% of their requested fees, far less than any sister state, despite Tennessee's being one of two states to share responsibility for the Supreme Court argument. At the minimum, the defendants request a 20% deduction of various firms' fees.

## III. Analysis

### A. The Reasonableness Of The Requested Fees

For necessary frame of reference, the plaintiffs' counsel in Ohio litigated two cases, *Obergefell v. Hodges* and *Henry v. Hodges*. Both involved the same-sex marriage recognition question, and the district court proceedings included oral argument for injunctive and declaratory relief. *Obergefell v. Hodges*, 1:13-cv-501 (S.D. Ohio). Their team consisted of ten attorneys (and four non-lawyers), who billed a total of 3,046.9 total hours. *Id.* (Docket No. 87 at p. 15). The plaintiffs sought $1.147 million in attorney's fees and a 50% enhancement, and they ultimately agreed to a fee award of $1.3 million (118% of their requested fees, obviously including some enhancement). *Id.* (Docket Nos. 87, 90). Kentucky's share of the *Obergefell* litigation included two cases, *Bourke v. Beshear* (same-sex marriage recognition) and *Love v. Beshear* (same-sex marriage licensing). The district court proceedings included a motion for summary judgment and a relief hearing. *Love v. Beshear*, 3:13-cv-00750 (W.D. Ky.). The plaintiffs' team consisted of nine attorneys billing a total of 3,522.71 total hours. They sought $1.195 million in fees and a 75% enhancement. *Id.* (Docket No. 105). They were awarded a

12

judgment of $1,153,230 (96.67% of their requested fees with no enhancement). *Love v. Beshear* (No. 3:13-CV-750-H) (W.D. Ky, May 14, 2014); *Bourke v. Beshear* (No. 3:13-750-CRS) (W.D. Ky. Jan. 13, 2016). Finally, the plaintiffs' counsel in Michigan, who engaged in a nine-day trial in the district court and later argued the same-sex marriage licensure question before the U.S. Supreme Court, consisted of six attorneys billing a total of 5,474.2 hours. *DeBoer v. Snyder*, 2:12-cv-10285 (E.D. Mich.) (Docket No. 180 at p. 4). This includes 796.7 hours of time billed by Mary Bonuato, counsel from the Gay & Lesbian Advocates & Defenders, who came onboard after the loss at the Sixth Circuit to participate in drafting the Supreme Court briefs and to argue the other question presented at Supreme Court oral argument. The plaintiffs sought $1.927 million in attorneys' fees and an unspecified enhancement, and the parties stipulated to a fee award of $1.9 million (100% of their requested fees). *Id.* (Docket Nos. 177, 191). In short, the plaintiffs have been very successful in obtaining their attorney's fees in these cases.

In this particular case, however, generally speaking, many of the defendants' arguments have merit. The defendants argue that the plaintiffs retained a legal team of 19 attorneys, nearly double that of the nearest sister state, and billed 5,974.5 hours, more than any other sister state, to litigate this case – especially considering the abbreviated district court proceedings (compared to, *e.g.*, Michigan, where there was a nine-day trial). For example, while an imperfect comparison, Ropes & Gray attorneys have billed over 2,100 hours for the Supreme Court aspect of this case, while Ms. Bonuato billed less than 800 hours for her parallel involvement in the Supreme Court aspect of the Michigan case. There is also merit to the defendants' concerns about the high number of time entries spent on what the court would term "coordination" – emails, meetings, travel, etc. – as opposed to actual legal research, drafting, revisions, and mooting. The fee entries

reflect that, while the 19 attorneys were consistently engaged in matters related to the case, often these matters were only tangentially related to the core of the case, leading the court to question whether a fee-paying client would have tolerated being billed for all of the same expended efforts.

There is less merit, however, to the defendants' assertion that entire groups of attorneys should have been excluded from working on the case as it moved from stage to stage. The defendants contend that Rubenfeld's, Holland's, and Lambert's attorney fees after the engagement of Sherrard & Roe should be excluded, whole cloth, because they suddenly became superfluous. The defendants further object to NCLR's and Sherrard & Roe's fees (excepting those of Mr. Harbison for continuity purposes) after the engagement of Ropes & Gray to handle the Supreme Court argument. These positions both (1) unfairly downplay the role of the civil rights attorneys who made this case possible – in particular Rubenfeld, a nationally known civil rights litigator who had much to contribute to the litigation of this case through its climax – and (2) misunderstand the appellate litigation process, which is not one where sets of attorneys continually "hand off" the case to new sets of attorneys and then retire from the matter entirely. Generally speaking, it is not necessary for counsel to remove themselves from a case if the time they are contributing is reasonable and necessary.

The defendants' objection to the plaintiffs' billing format also generally lacks merit. The Sixth Circuit has held that block billing is acceptable, as long as "the description of the work performed is adequate." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014); *see also Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007). The court has reviewed the time entries here and counsels' descriptions

14

of their activities are sufficient to assess "whether the cost o[f] the service is reasonably related to the quality or extent of service." *Id*. The defendants' objections based on block billing, therefore, will be denied. The court does, however, recognize that some time entries are impermissibly vague (*e.g.*, "e-mail") and will take this occasional vagueness into account in its final award.

The defendants' objection to time billed to the right to travel issue is similarly misplaced. The reason this issue was never considered is merely because the plaintiffs won on other grounds. "Litigants may in good faith raise alternative legal grounds for a desired legal outcome, and the court's . . . failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435. Successful and unsuccessful claims are deemed related when they "involve a common core of facts," are "based on related legal theories," or when counsel's time is "devoted generally to the litigation as a whole, making it difficult to divide the hours expended." *Barnes*, 401 F.3d at 745 (citing *Hensley*, 461 U.S. at 433). In this case, the various claims were related and likely evaluated together. The court, therefore, finds that it was appropriate for counsel to have spent time considering the right to travel issue.[2]

The court does find that certain media and public relations expenses are not properly included in the calculation of the plaintiffs' attorneys's fees. As Senior Judge Simpson[3] found, "while it may also be true that media inquiries were numerous from an interested public,

---

[2] Similarly, it was not inappropriate for counsel to travel to participate in a moot regarding the licensure issue. The issues in this case were bound together and were to be argued in complementary fashion.

[3] Sadly, Judge Heyburn passed away before the Supreme Court ruled, leaving the determination of attorney's fees to another judge.

answering these inquiries cannot be considered necessary for the proper litigation of the suit."
*See Bourke v. Beshear* (No. 3:13-750-CRS) (W.D. Ky, Jan. 13, 2016) (citing *Gratz v. Bollinger*,
353 F. Supp 2d 929, 941 (E.D. Mich. 2005)) (Docket No. 112 at p. 9).  The court will take this
into account in its determination of the reasonableness of the final attorney's fees award.

The court also finds that there was some duplication of effort in the litigation of this
matter.  While perhaps desirable, it was not *necessary* for so many attorneys to travel to and
participate in meetings, moots and oral arguments.  An excellent result was achieved for the
client, but one that at times could likely have been achieved with the billing discipline that a fee-
paying client would have demanded.

In complicated cases such as this, involving many lawyers, the Sixth Circuit has approved
the arbitrary, but essentially fair, approach of simply deducting a percentage of the total hours to
eliminate duplication of services.  *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624,
636-37 (6th Cir. 1979); *see also, e.g., Helfman v. GE Group Life Assurance Co.*, No. 06–13528,
2011 WL 1464678 (E.D. Mich. April 18, 2011) (describing the "common practice" in this circuit
of "across the board fee reductions"); *Heath v. Metro. Life Ins. Co.*, 2011 WL 4005409, at
*10-11 (M.D. Tenn. Sept. 8, 2011) (noting that a court may address vague time entries with a
percentage fee reduction); *Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997), *abrogated on
other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) (holding that a
district court may take duplication into account by making a simple across the board reduction by
a certain percentage).

Given the objections recognized by the court herein as having merit, including
duplication of effort, the court finds that some reduction is appropriate.  While the court will not

16

grant a reduction of the proportion sought by the defendants – as doing so would not fully

compensate the plaintiffs – the court finds that a 15% across-the-board reduction in the requested

fees is appropriate.  The court will, therefore, reduce the lodestar calculation by 15%, from

$2,333,095.63 to $1,983.131.29.  The fee remaining after the across-the-board reduction ensures

the reasonableness and fully compensatory nature of the award under Section 1988.[4]

### B.      Enhancement of the Fees

Having made this determination, the court may then, within reason, "adjust the lodestar to

reflect other relevant considerations peculiar to the subject litigation."  *Adcock-Ladd v. Sec'y of*

*Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (internal quotation marks and citations omitted).

This normally occurs only under rare and exceptional circumstances.  *Perry*, 624 F. App'x at

372.  The party seeking to enhance attorney fees "bears the burden of showing that such an

adjustment is necessary to the determination of a reasonable fee."  *Gonter v. Hunt Valve Co.*, 510

F.3d 610, 621 (6th Cir. 2007) (internal quotations and citations omitted).  The Sixth Circuit has

said that the court may consider a variety of factors in determining the appropriateness of a fee

enhancement, including:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of other employment by the attorney due to acceptance of
> the case; (5) the customary fee; (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances; (8) the
> amount involved and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the professional relationship with the client; and (12)
> awards in similar cases.

---

[4] Notably, the modified fee award of $1,983.131.29 is similar to the fee award obtained in
Michigan, which shared responsibility for arguing the other half of the Supreme Court case.

*Barnes*, 401 F.3d at 745-46 (citing *Johnson*, 488 F.2d at 717-19). In the majority of cases, the lodestar amount already reflects these factors within the court's calculation of a reasonable hourly rate and hours billed. *See Gonter*, 510 F.3d at 621; *Blum*, 465 U.S. at 898.

The plaintiffs request an upward fee enhancement. They argue that the litigation was a great success, was very complex, was unpopular, and included risks for the attorneys involved. Having considered these arguments, however, the court finds that a fee enhancement is unwarranted in this case. As Senior Judge Simpson aptly explained in the Kentucky companion case of *Bourke v. Beshear*, the plaintiffs mischaracterize the posture and popularity of their case:

> Here, the [p]laintiffs did not face . . . overwhelming adversity. Not only would many attorneys have taken up similar cases, many attorneys across the country had and were representing similar clients with similar claims. *See, e.g., Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014); *Geiger v. Kitzhaber*, 994 F. Supp. 2d 1128 (D. Or. 2014). The lack of undesirability which may merit a fee enhancement is underscored by the number of similar cases that were joined for oral argument. While this litigation had an important effect on society, a fee enhancement was not required to attract attorneys to take up this call to litigate. Furthermore, the alleged complexity and novelty of this case is tempered by the previous and ongoing litigation in other districts and circuits during litigation. *See, e.g., Bostic*, 970 F. Supp. 2d 456; *Whitewood*, 992 F. Supp. 2d 410; *Geiger*, 994 F. Supp. 2d 1128. This case did not exist within a vacuum and the [p]laintiffs did not tread their path to the Supreme Court on their own. The issues in this case were important to the clients and to the general public. The attorneys provided high quality representation and certainly did achieve a successful result. These reasons alone, however, are not enough for the [c]ourt to enhance the requested attorney fees. The lodestar calculation already accounts for the attorneys' skill, experience, labor, and success.

*Bourke v. Beshear* (No. 3:13-750-CRS) (W.D. Ky, Jan. 13, 2016) (Docket No. 112 at pp. 14-15). The court agrees with this analysis and finds that the lodestar amount, without enhancement, fully compensates plaintiffs' counsel for their excellent work on this important case.

18

## C.     Expenses

The defendants also argue that the expenses requested by the plaintiffs are excessive because they are attributable to duplicative work and unnecessary travel. To the extent that the court has found that the defendants' arguments concerning duplication of billing time and overstaffing have some merit, these parallel arguments, concerning primarily travel expenses, likewise have merit. Accordingly, the court finds that some reductions in the requested expense reimbursements are appropriate.

The defendants ask the court to disallow Ms. Holland's and Ms. Lambert's requested expenses. Ms. Holland has requested reimbursement for $600.00 for "airfare travel to and from DC twice," presumably for the Supreme Court argument and the reading of the decision. Similarly, Ms. Lambert has requested reimbursement for hotel lodging in Nashville and Cincinnati for preparation and oral argument in the Sixth Circuit in the amount of $870.35, and the NCLR has requested $691.74 for airfare and six nights lodging on Ms. Lambert's behalf for the Supreme Court argument. The court does not find that Ms. Holland and Ms. Lambert's presence at these events was necessary, given the number of other attorneys present, and will therefore deny those expenses.

The defendants make similar objections to the travel of Ms. Rubenfeld. However, the court finds that personal counsel to the Nashville plaintiffs, a civil rights attorney of national expertise and stature, was central to this case in ways in which other attorneys were not. It was appropriate for Ms. Rubenfeld to participate in strategy and moot sessions and attend oral arguments. The court will therefore grant Ms. Rubenfeld's personal expense request of $655.86

19

and a portion of the expense request that the NCLR made on her behalf for $1,661.06.[5]

Next, the defendants object to all of the NCLR's expenses as unnecessary. Most of the expenses relate to airfare and lodging for the various NCLR attorneys to go to meetings in Nashville, attend moot courts, and attend argument before the Sixth Circuit and the Supreme Court. The defendants argue that, since Tennessee counsel were already working on the case at the district court and Sixth Circuit levels, the NCLR's physical attendance was unnecessary. Finally, the defendants argue that the NCLR's attendance at the Supreme Court was unnecessary, as the case was being briefed and argued by Ropes & Gray at that point. The court has rejected the defendants' arbitrary argument that the NCLR should have removed themselves from the case when Ropes & Gray were retained. However, there is no question that the NCLR incurred significant travel expenses for more than one attorney over the course of litigating this matter during the time that Sherrard & Roe and Ropes & Gray were retained. While the result was outstanding, the court must take account of the duplication of effort. The court will, therefore, grant the expense requests related to the participation and travel (but not the bar admission) of the NCLR's Legal Director, Shannon Minter, and disallow expenses related to the travel and bar admissions of other NCLR attorneys. This will result in an award of $11,277.62 in expenses to the NCLR.[6]

The defendants object to Sherrard & Roe expenses related to (1) travel to the moot court held in Ann Arbor, Michigan on the licensure question and (2) duplicative travel to the Supreme

_____

[5] The NCLR has requested reimbursement for, *inter alia*, airfare and four nights of lodging for the Supreme Court argument in Washington, D.C. The court finds this to be excessive and will order reimbursement for airfare and only one night of lodging.

[6] This number is inclusive of the expenses requested on Ms. Rubenfeld's behalf.

Court argument. Some participation in the moot was appropriate and Sherrard & Roe, as primary local counsel for all plaintiffs would be a commonsense participant in such an endeavor. The two primary attorneys who handled this case for Sherrard & Roe were William Harbison and J. Scott Hickman. The court finds it appropriate to limit travel expenses to these individuals in the service of efficiency, as any additional attorneys would have been merely duplicative of their knowledge and experience during these events. Under this rubric, Sherrard & Roe will be reimbursed for $9,319.56 of expenses.

Finally, the defendants object to a small amount of Ropes and Gray expenses. The defendants primarily argue that, on several occasions, Ropes and Gray attorneys could have participated in meetings electronically. The objections mainly focus on attorney Justin Florence. The court notes that Ropes & Gray did not bill for the time of Mr. Florence and finds it reasonable that the firm be reimbursed for reasonable expenses related to his participating in the litigation of this matter. The court has reviewed the remaining expense request and finds it generally reasonable, noting that, because Ropes & Gray was onsite in Washington, D.C., it incurred less travel expense for the Supreme Court argument and related activities. Accordingly, the court will grant Ropes & Gray $31,663.00 in expenses.

The total expense award in this case will therefore be $52,916.04.

## CONCLUSION

The results obtained in this case were superb and far-reaching. As the prevailing party, the plaintiffs will, therefore, be rewarded a significant portion of their requested reasonable attorney's fees and expenses under Section 1988.

For the reasons stated herein, the plaintiffs' Motion for Attorneys' Fees, Costs, and

21

Expenses (Docket No. 98) will be granted in part and denied in part.  The plaintiffs' request of $2,333,095.63 will be reduced by 15%, and the plaintiff will be awarded $1,983.131.29 in attorney's fees and $52,916.04 in costs and expenses.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge